Jose GARZA, Petitioner,

v.

EXEL LOGISTICS, INC. and
Interim Services Pacific
LLC, Respondents.

No. 02–1187.

Supreme Court of Texas.

Argued Feb. 18, 2004.

Decided April 8, 2005.

Loren George Klitsas, Klitsas & Verch-
er, P.C., Lauren L. Beck–Harris and Ei-

leen K. Wilson, Johnson, Spalding, Doyle, West & Trent, L.L.P., Houston, for Petitioner.

Robert D. Allen, Baker & McKenzie, LLP, Linda Marie Dedman, Dedman & Handschuch, Dallas, for Respondents.

E. Thomas Bishop and Alexander N. Beard, Bishop & Hummert, P.C., Dallas, for Amicus Curiae Utica National Insurance Group.

Neal Kieval, Phillips & Akers, P.C., Houston, for Amicus Curiae The Kroger Company.

Justice OWEN delivered the opinion of the Court.

A worker hired by a temporary employment agency was injured while performing tasks for the agency's client. The trial court granted summary judgment for the agency and its client, concluding that the Workers' Compensation Act's exclusive remedy provision bars the worker's common law claims.[1] The court of appeals affirmed.[2] We affirm the court of appeals' judgment as to the temporary employment agency. But because the client company did not establish that it is "covered by workers' compensation insurance coverage," which is necessary to come within the exclusive remedy provision, we reverse the court of appeals' judgment as to the client company and remand the case to the trial court for further proceedings.

## I

Interim Services Pacific LLC, a temporary employment agency, employed Jose Garza as a laborer and assigned him to perform general labor at Exel Logistics, Inc., one of Interim's clients. Garza sued Interim and Exel after he was injured while crossing over a moving conveyor belt to turn off a machine at the request of an Exel supervisor.

Interim and Exel jointly moved for summary judgment, arguing that both companies were Garza's employers when he was injured, a workers' compensation policy that Interim obtained inured to Exel's benefit, and the Texas Workers' Compensation Act's exclusive remedy provision therefore bars Garza's claims. In response, Garza conceded that Interim was his employer and that he received workers' compensation benefits through a policy Interim procured, but he argued that Exel was not his employer and that there was insufficient proof that Exel was covered by workers' compensation insurance.

The trial court granted summary judgment in favor of Interim and Exel, and the court of appeals affirmed, holding that both Interim and Exel were entitled to summary judgment based on the exclusive remedy provision. The court of appeals concluded that the summary judgment evidence established that Interim and Exel were Garza's co-employers based on Exel's actual control over Garza and other temporary workers assigned to Exel.[3] The court also determined that Exel was covered by Interim's workers' compensation insurance policy based on contract provisions requiring Exel to pay Interim for costs associated with maintaining workers' compensation insurance.[4]

On appeal to this Court, Garza does not dispute that workers' compensation is his exclusive remedy against Interim. Because we conclude that Exel did not conclusively establish that it is "covered by workers' compensation insurance cover-

---

**1.** *See* Tex. Lab.Code § 408.001.

**2.** 100 S.W.3d 280.

**3.** *Id.* at 287–88.

**4.** *Id.* at 288.

age" within the meaning of the exclusive remedy provision,[5] we reverse the court of appeals' judgment in part and remand the case to the trial court.

## II

The causes of action available to Garza against Exel depend on whether Exel was (1) his employer and "covered by workers' compensation insurance coverage,"[6] (2) his employer and not covered by workers' compensation insurance,[7] or (3) not his employer. In the first instance, Garza's exclusive remedy would be recovery of workers' compensation benefits.[8] In the second, Garza would be required to prove that his injuries were caused by the negligence of Exel or its agent, servant or employee acting within the general scope of employment, but Exel would be foreclosed from asserting certain defenses, including contributory negligence.[9] In the third, Garza would have the full array of causes of action, and Exel would have all defenses available to it.

■ Exel asserts that it was Garza's employer and that it was covered by workers' compensation insurance. Garza contends there is a fact question on both scores. Because this case was decided on summary judgment, Exel must establish each of its contentions as a matter of law.[10]

The court of appeals decided this case before we issued our decision in *Wingfoot Enterprises v. Alvarado.*[11] In *Wingfoot,* we examined the Workers' Compensation Act and held that an employee of a temporary employment agency who is "injured while working under the direct supervision of a client company is conducting the business of both the general employer [the temporary employment agency] and that employer's client."[12] We further held, based on the provisions of the Act, that the injured "employee should be able to pursue workers' compensation benefits from either," and that "[i]f either has elected not to provide coverage, but still qualifies as an 'employer' under the Act, then that employer should be subject to common law liability without the benefit of the defenses enumerated in section 406.033."[13]

In *Wingfoot,* it was undisputed that the client company had workers' compensation insurance coverage, and no one challenged the jury's finding that the client controlled the details of the employee's work at the time of her injury.[14] The only question was whether the temporary employment agency that was Alvarado's general employer could also be an "employer" for purposes of the exclusive remedy provision

5. Tex. Lab.Code § 408.001(a).

6. *Id.* § 408.001(a).

7. *Id.* § 406.033.

8. *Id.* § 408.001(a). It provides:

  **§ 408.001. Exclusive Remedy; Exemplary Damages**
  (a) Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee.

9. *Id.* § 406.033(a), (c), (d).

10. *See Johnson & Johnson Med., Inc. v. Sanchez,* 924 S.W.2d 925, 927 (Tex.1996) (a defendant moving for summary judgment on an affirmative defense must prove each element of its defense as a matter of law, leaving no issues of material fact).

11. 111 S.W.3d 134 (Tex.2003).

12. *Id.* at 143.

13. *Id.* (citing Tex. Lab.Code § 406.033).

14. *Id.* at 135–36.

in section 408.001.[15] We held that the exclusive remedy provision applied to a general employer that had workers' compensation insurance coverage.[16]

In the case presently before us, we have the reverse situation. Garza concedes that his general employer Interim, a temporary employment agency, was his employer when he was injured and that his claims against Interim are limited to recovery of workers' compensation benefits. The question is whether Interim's client, Exel, was also Garza's employer and was covered by workers' compensation insurance.

In determining whether Exel established as a matter of law that it was Garza's employer, we begin with the provisions of the Workers' Compensation Act to determine who is an employee and who is an employer for workers' compensation purposes. The Act defines "employer" in section 401.011, the general definitions section:

> "Employer" means, unless otherwise specified, a person who makes a contract of hire, employs one or more employees, and has workers' compensation insurance coverage. The term includes a governmental entity that self-insures, either individually or collectively.[17]

We consider below whether Exel "has workers' compensation insurance coverage" and conclude that is an unanswered question based on this record. However, and more importantly, the meaning of "employer" is "otherwise specified" in the Act when determining whether an employer has elected to obtain workers' compensation coverage. Section 406.001, found in the subchapter dealing with "Coverage Election," says: "In this subchapter, 'employer' means a person who employs one or more employees."[18] This definition is one piece to the puzzle, but it does not, in and of itself, tell us whether Garza was Exel's employee. "[A] person who employs one or more employees" is a less restrictive definition than the general definition in section 401.011. But it is obvious that an employer of one or more employees is not the employer of *every* person who is an employee. General Motors has more than one employee, but it is not the employer of Ford Motor Company employees, at least not as a general proposition. To fully answer the question of who is an employer and who is that employer's employee, we must look elsewhere in the Act.

The Act defines "employee" as "each person in the service of another under a contract of hire, whether express or implied, or oral or written."[19] There is no indication from the legislative history of this definition that the Legislature intended to dispense with traditional notions of what it means to be "in the service of another." We are guided by the Code Construction Act,[20] which tells us that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage," and "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."[21]

In another section of the Workers' Compensation Act that pertains only to certain hiring contractors and independent contractors in the building or construction

---

**15.** *Id.* at 134–35 (citing Tex. Lab.Code § 408.001).

**16.** *Id.* at 135, 139, 149.

**17.** Tex. Lab.Code § 401.011(18).

**18.** *Id.* § 406.001.

**19.** *Id.* § 401.012(a).

**20.** Tex. Gov't Code § 311.001–.034.

**21.** *Id.* § 311.011.

industry,[22] the Legislature implicitly recognized that exerting "employer-like" controls might cause an employee of an independent contractor to be considered the employee of the hiring contractor for workers' compensation purposes.[23] The Legislature specified that controlling certain matters did not amount to "employer-like controls." [24]

Accordingly, in determining if a general employee of a temporary employment agency is also an employee of a client company for purposes of the Act, we consider traditional indicia, such as the exercise of actual control over the details of the work that gave rise to the injury.

■ The material evidence in the summary judgment record in this regard is undisputed. Garza was working on Exel's premises when he was injured. He was supervised on those premises by an Interim employee, Joe Castaneda. Garza testified, however, that sometimes he was supervised by an Exel employee, Roberto Luna. When asked: "Generally, on a day-to-day basis, who was the person that told you exactly what to do and how to do it?," Garza replied: "As I said, sometimes it would be Roberto [an Exel supervisor];

and sometimes it would be Joe Castaneda [an Interim supervisor]." Garza was injured when he responded to direct instructions from Luna, the Exel supervisor. Luna told Garza to cross over a moving conveyor belt to turn off a machine, and Garza was injured in doing so. When asked why he did not walk around the conveyor belt, Garza testified, "I was going to go around, but Roberto Luna told me to cross over down there in order to turn off the machine quickly."

This undisputed evidence establishes that at the time Garza was injured, he was working on Exel's premises, in the furtherance of Exel's day-to-day business, and the details of his work that caused his injury were specifically directed by Exel. Accordingly, for workers' compensation purposes, Garza was an Exel employee within the meaning of section 401.012—(a) a "person in the service of another under a contract of hire, whether express or implied, oral or written" [25]—at the time he was injured. We turn to whether Exel was covered by a workers' compensation insurance policy.

### III

■ Exel has not come forward with a workers' compensation policy that it ob-

---

22. Tex. Lab.Code § 406.142. It provides:

**§ 406.142. Application**

This subchapter applies only to contractors and workers preparing to construct, constructing, altering, repairing, extending, or demolishing:

(1) a residential structure;

(2) a commercial structure that does not exceed three stories in height or 20,000 square feet in area; or

(3) an appurtenance to a structure described by Subdivision (1) or (2).

23. Tex. Lab.Code § 406.146(b) provides:

(b) A hiring contractor does not exert employer-like controls over an independent contractor or an independent contractor's employee solely because of:

(1) controlling the hours of labor, if that control is exercised only to:

(A) establish the deadline for the completion of the work called for by the contract;

(B) schedule work to occur in a logical sequence and to avoid delays or interference with the work of other contractors; or

(C) schedule work to avoid disturbing neighbors during night or early morning hours or at other times when the independent contractor's activities would unreasonably disturb activities in the neighborhood; or

(2) stopping or directing work solely to prevent or correct an unsafe work practice or condition or to control work to ensure that the end product is in compliance with the contracted for result.

24. *Id.*

25. *Id.* § 401.012(a).

tained for itself. Instead, it contends that under its contract with Interim, the "markup" it paid to Interim was to be used to purchase workers' compensation insurance, that Interim in fact purchased insurance, and therefore, Exel is covered. The evidence, however, does not indicate that coverage was extended to Exel in its own right. The court of appeals concluded that the contract between Interim and Exel "required [Exel] to pay Interim for the costs associated with maintaining [Interim's] workers' compensation insurance," and therefore, "Excel [sic] provided worker's [sic] compensation insurance for Garza, albeit through Interim." [26] We disagree. The Act does not permit a temporary employment agency like Interim to obtain coverage for a client simply by obtaining coverage for itself. There must be explicit coverage for the client.

The Act governs how an employer must make an election to obtain coverage. Section 406.002 says "an employer may elect to obtain workers' compensation insurance coverage," and if it does so, it is subject to the Act.[27] The methods of obtaining coverage specified in the Act are "through a licensed insurance company or through self-insurance as provided by this subtitle." [28] "An insurance company may contract to secure an employer's liability and obligations and to pay compensation by issuing a workers' compensation insurance policy," [29] and "[t]he contract for coverage must be written on a policy and endorsements approved by the Texas Department of Insurance." [30] There is no evidence that an insurance company has contracted to secure Exel's liability and obligations, as distinguished from Interim's.

Other provisions of the Labor Code indicate that the Legislature envisioned that a workers' compensation policy must cover the employer and that premiums are to be based on that employer's rating experiences, not another employer's. One such indication is the Staff Leasing Services Act.[31] To qualify under that Act, a contract between a staff leasing license holder and its client must provide that the leasing company "shares, as provided by Subsection (b), with the client company the right of direction and control over employees assigned to a client's worksites." [32] The leasing company decides whether to obtain workers' compensation coverage, and its election is binding on its client.[33] If the leasing company elects coverage, its policy covers both the leasing company and its client.[34] However, the client company's experience rating, not the leasing company's, is used to determine premiums for workers' compensation insurance for the

26. 100 S.W.3d at 288.

27. Tex. Lab.Code § 406.002.

28. *Id.* § 406.003.

29. *Id.* § 406.051(a).

30. *Id.* § 406.051(b).

31. *Id.* §§ 91.001–.063.

32. *Id.* § 91.032(a)(1). The referenced subsection (b) says in part:
   (b) Notwithstanding any other provision of this chapter, a client company retains responsibility for:

   (1) the direction and control of assigned employees as necessary to conduct the client company's business, discharge any applicable fiduciary duty, or comply with any licensure, regulatory, or statutory requirement.
   *Id.* § 91.032(b)(1).

33. *Id.* § 91.042(c), (d); *see also Tex. Workers' Comp. Ins. Fund v. Del Indus., Inc.,* 35 S.W.3d 591, 594 (Tex.2000).

34. Tex. Lab.Code § 91.042(c); *Del Indus.,* 35 S.W.3d at 594.

first two years.[35] Thereafter, the premiums may be based on other factors.[36] The Staff Leasing Services Act does not apply to temporary or seasonal employment,[37] but the specificity with which it addresses workers' compensation strongly indicates that a leasing company cannot accomplish under the general workers' compensation provisions of the Labor Code what it is prohibited from accomplishing under the Staff Leasing Services Act, which is also a part of the Labor Code. Suppose, for example, that the leasing company and the client decided not to expressly agree in a written contract that the client shares the right of direction and control of employees, but in fact, the parties contemplated they would share actual control and did so. The Staff Leasing Services Act would not apply. Did the Legislature intend to allow the leasing company and its client nevertheless to agree that the leasing company would obtain a policy for itself, based on its own experience rating, and that such a policy would also cover leased employees while working under the actual control of the client? The answer is no, this is not contemplated by the Labor Code. The specificity and details of the Staff Leasing Services Act negate the notion that parties can, by private agreement, decide that a single policy naming only one insured will cover one company's employees while they are working under the direct control of another company, or that the experience rating of one and not the other will determine who the named insured will be.

Other provisions of the Labor Code strongly suggest that two employers cannot agree that one workers' compensation policy will name only one employer but cover both. The Labor Code has a specific section that allows general contractors to agree in writing with subcontractors that the general contractor will provide workers' compensation coverage for the subcontractor's employees.[38] Such an agreement

---

35. Tex. Lab.Code § 91.042(b).

36. *Id.* § 91.042(e).

37. *Id.* § 91.001(14).

38. Tex. Lab.Code § 406.123 says:

§ **406.123. Election to Provide Coverage; Administrative Violation**

(a) A general contractor and a subcontractor may enter into a written agreement under which the general contractor provides workers' compensation insurance coverage to the subcontractor and the employees of the subcontractor.

(b) If a general contractor has workers' compensation insurance to protect the general contractor's employees and if, in the course and scope of the general contractor's business, the general contractor enters into a contract with a subcontractor who does not have employees, the general contractor shall be treated as the employer of the subcontractor for the purposes of this subtitle and may enter into an agreement for the deduction of premiums paid in accordance with Subsection (d).

(c) A motor carrier and an owner operator may enter into a written agreement under which the motor carrier provides workers' compensation insurance coverage to the owner operator and the employees of the owner operator.

(d) If a general contractor or a motor carrier elects to provide coverage under Subsection (a) or (c), then, notwithstanding Section 415.006, the actual premiums, based on payroll, that are paid or incurred by the general contractor or motor carrier for the coverage may be deducted from the contract price or other amount owed to the subcontractor or owner operator by the general contractor or motor carrier.

(e) An agreement under this section makes the general contractor the employer of the subcontractor and the subcontractor's employees only for purposes of the workers' compensation laws of this state.

(f) A general contractor shall file a copy of an agreement entered into under this section with the general contractor's workers' compensation insurance carrier not later than the 10th day after the date on which the contract is executed. If the gen-

"makes the general contractor the employer of the subcontractor and the subcontractor's employees only for purposes of the workers' compensation laws." [39] There are similar provisions for motor carriers and employees of an owner-operator.[40] If two employers could agree that one of them would obtain a workers' compensation insurance policy that named only one of them but that it was to be for the benefit of both and therefore both would be protected by the exclusive remedy of workers' compensation benefits, then there would have been no need for the statutory grant of authority to general contractors and motor carriers to obtain coverage for themselves as well as subcontractors or independent contractors and their employees. The Legislature obviously thought that specific permission was necessary.

Nothing in the contract between Interim and Exel indicates that Interim was required to obtain a workers' compensation policy that named both parties as insureds, or that Interim was required to obtain a separate policy for Exel. The contract indicates the opposite.

Exel points to a section in the contract entitled "PAYMENT FOR SERVICES," which provides:

> In consideration for [Interim's] performance of the Services, [Interim] shall receive as sole payment, the hourly rates negotiated with Exel Logistics Operations in the respective market plus

the markups reflected for the appropriate classification of temporary labor for the respective market as set forth in Exhibit A1 (Rate Schedule). The markups in Exhibit A1 include all costs, overhead and burden associated with providing temporary labor to Exel Logistics, including but not limited to costs associated with testing, background investigations, training, workers compensation, insurance, etc. No fees may be billed other than the markup on the hourly rate.

It is unclear from this paragraph whether the workers' compensation insurance was to be procured for Interim or Exel, but other provisions make it clear that Interim was to be the insured, not Exel. A paragraph addressing insurance required Exel to be named as an additional insured under "Commercial General Liability" coverage, "Automobile Liability" coverage and "Commercial Blanket Bond," but not "Workers' Compensation" coverage:

> 4.8 [Interim] agrees to procure and maintain insurance during the entire term of the Agreement and, prior to the commencement of providing the Services, shall furnish to Exel Logistics Certificates of such insurance and, upon its request, shall provide Exel Logistics the opportunity to review [Interim's] policies, covering the following risks:

---

eral contractor is a certified self-insurer, the copy must be filed with the division of self-insurance regulation.

(g) A general contractor who enters into an agreement with a subcontractor under this section commits a violation if the contractor fails to file a copy of the agreement as required by Subsection (f). A violation under this subsection is a Class B administrative violation.

(h) Notwithstanding Subsection (b), a person who performs work or provides a service for an oil or gas well operator and

who is an independent contractor that has no employees shall be treated in the same manner as an independent contractor with employees and is not entitled to coverage under the general contractor's workers' compensation insurance policy unless the independent contractor and the general contractor enter into an agreement under this section.

**39.** *Id.* § 406.123(e).

**40.** *Id.* § 406.123(c), (d), (e).

(i) Commercial General Liability—$1,000,000

(ii) Automobile Liability—$1,000,000

(iii) Workers' Compensation—Statutory Limits

(iv) Employer's Liability—$1,000,000

(v) Employer Practices—$1,000,000

(vi) Directors/Officers—$1,000,000

(vii) Commercial Blanket Bond—$1,000,000

(viii) Depositor's Forgery—$100,000

(ix) Umbrella Liability—$20,000

[Interim] will add Exel Logistics as an additional insured to coverage (i), (ii), and (vii).

Additionally, the contract provided that none of the temporary employees would be eligible for Exel's employee benefits, which would seem to include workers' compensation benefits, if any:

> [Interim] hereby acknowledges and agrees that neither [Interim], the Employees, nor any of [Interim's] employees, associates, contractors, agents, representatives, assignees or successors in interest will be eligible for any Exel Logistics employee benefits.

The term "the 'Employees' " is defined in the contract: "[Interim] shall, as approved and supervised by Exel Logistics, furnish and assign necessary personnel (collectively the 'Employees') and equipment, except such as are furnished by Exel Logistics, to complete various tasks as required to perform the Services."

But even if Interim were contractually obligated to obtain workers' compensation insurance that named Exel as an insured, or it gratuitously chose to do so, no such policy has been identified or made part of this record. Accordingly, Exel has not established that it is "covered by workers'

compensation insurance coverage" for a "work-related injury sustained by the employee," in this case, Garza, which is a prerequisite to the application of the exclusive remedy provision in section 408.001(a).[41]

In this case, we are construing only the Labor Code, specifically the Workers' Compensation Act; we are not applying general common-law principles regarding vicarious liability for injuries to third parties. We reiterate what we said in *Wingfoot*: "The common-law principles that define when there will be vicarious liability are designed to assign liability for injury to third parties to the party who was directing the details of the negligent actor's conduct when that negligence occurred."[42] The Workers' Compensation Act was not. Nor are we called upon to consider today the rights of two workers' compensation carriers who have insured against injuries to the same individual, or whether an injured employee who is insured under more than one workers' compensation policy may retain benefits under both.

\* \* \*

We reverse the court of appeals' judgment in Exel's favor and remand the case to the trial court for further proceedings. Because Garza concedes that Interim is his employer and that he has received workers' compensation insurance under its policy, we affirm the court of appeals' judgment as to Interim.

---

**41.** *Id.* § 408.001(a).

**42.** *Wingfoot Enters. v. Alvarado,* 111 S.W.3d 134, 146 (Tex.2003).