NUMBER 13-02-450-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


WESTERN STEEL COMPANY, INC., Appellant,


v.



HANK ALTENBURG, Appellee.

 


On appeal from the 347th District Court of Nueces County, Texas.


 


MEMORANDUM OPINION ON REMAND



Before Justices Yañez, Castillo (1), and Garza


Memorandum Opinion On Remand by Justice Yañez



 By two issues, appellant, Western Steel Company, Inc. ("Western"), challenges the
legal and factual sufficiency of the jury's finding that appellee, Hank Altenburg, was not
Western's borrowed employee. On remand, we hold the evidence is legally insufficient to
support the jury's finding that Altenburg was not Western's borrowed employee. 
Accordingly, we sustain Western's first issue, reverse the judgment in Altenburg's favor,
and render judgment that he take nothing. 

Procedural Background


 In our original opinion in this case, a divided panel of this Court affirmed the trial
court's judgment. (2) Following Garza v. Exel Logistics, Inc., (3) we held that Western failed to
establish that the exclusive remedy provision of the workers' compensation statute barred
its liability because it did not show that it was covered by worker's compensation insurance
at the time of Altenburg's injury and that such coverage would have covered his claim. (4) 
The Texas Supreme Court held that we erred in addressing whether Western had workers'
compensation insurance at the time of Altenburg's injury because it was "undisputed." (5) 
The supreme court therefore reversed our judgment, remanded the cause to us, and
instructed us to consider Western's sufficiency challenges to the jury's finding that
Altenburg was not its borrowed employee. 

Standards of Review and Applicable Law 


 An appellant challenging the legal sufficiency of the evidence supporting an adverse
finding on which he had the burden of proof must show that "the evidence establishes, as
a matter of law, all vital facts in support of the issue." (6) We must consider the evidence in
the light most favorable to the judgment, crediting evidence favorable to the verdict if
reasonable jurors could, and disregarding evidence contrary to the verdict unless
reasonable jurors could not. (7) "If there is no evidence to support the finding, the reviewing
court will then examine the entire record to determine if the contrary proposition is
established as a matter of law." (8) Evidence that might be "some evidence" when
considered in isolation is nevertheless rendered "no evidence" when contrary evidence
shows it to be incompetent. (9) "The final test for legal sufficiency must always be whether
the evidence at trial would enable reasonable and fair-minded people to reach the verdict
under review." (10) Jurors are the sole judges of the credibility of the witnesses and the
weight to be given to their testimony. (11)

 To prevail on a factual sufficiency challenge to an adverse finding on an issue for
which the appellant had the burden of proof, the appellant must demonstrate that the
adverse finding is against the great weight and preponderance of the evidence. (12) After
considering and weighing all of the evidence, this Court can only set aside the verdict if it
is so contrary to the overwhelming weight of the evidence as to be clearly wrong and
manifestly unjust. (13) When both legal and factual sufficiency challenges are raised on
appeal, the court must first examine the legal sufficiency of the evidence. (14) 

 Recovery of workers' compensation benefits is the exclusive remedy of an employee
covered by workers' compensation insurance against an employer for a work-related injury
sustained by the employee. (15) "An employee may have more than one employer within the
meaning of the TWCA [Texas Workers' Compensation Act] and each employer may raise
the exclusive remedy provision as a bar to the employee's claims." (16) "In light of the
TWCA's definitions of employer and employee[,] the plaintiff's claims are barred by the
exclusive remedy provision if the client company [here, Western] establishes: (1) it was
the plaintiff's employer within the meaning of the TWCA, and (2) it was covered by a
workers' compensation insurance policy." (17) 

 In determining whether Western was Altenburg's employer, "we consider traditional
indicia, such as the exercise of actual control over the details of the work that gave rise to
the injury." (18) In Garza, the supreme court determined that the client company was the
plaintiff's employer based on the following: (1) the plaintiff was working on the client
company's premises when injured; (2) he was working in the furtherance of the client
company's day-to-day business; and (3) the details of his work that caused his injury were
directed by the client company. (19) 

 Analysis


 By its first issue, Western contends that as a matter of law, the evidence established
that Altenburg was its borrowed employee. Western argues that the testimony of five
witnesses, including Altenburg, established that it had the right to direct and control
Altenburg's work. 

 We begin by examining the record to determine whether there is some evidence to
support the jury's finding that Altenburg was not Western's borrowed employee. Altenburg
asserts that Western must show that the details of the work being done at the time of the
accident were under its control. We do not disagree with Altenburg's characterization of
Western's burden.

 It is undisputed that Altenburg was on Western's premises when the accident
occurred. With respect to which company was directing the details of the work he was
performing when he was injured, Altenburg points to evidence that (1) he brought his own
hand tools, safety equipment, and gloves; (2) when injured, he was providing welding
services that did not require specific instruction; and (3) he was not under the direct
supervision of any Western employee at the time of his injury. 

 However, Altenburg's own testimony contradicts his assertions. Although he
testified that Western provided him no training in cambering (20) a beam "while it was on the
floor," he also testified that a Western supervisor demonstrated the technique by (1)
"starting off" the first beam, (2) briefly observing Altenburg as he continued cambering the
beam, and (3) advising Altenburg that he would "check" on him periodically. On cross-examination, Altenburg testified, in pertinent part:

Q [Western's counsel]: Let me ask you this. Would you agree that Western
Steel had the right to direct and control your activities when you were a
temporary worker on their premises?


A [Altenburg]: Yes.


Q: Would you agree with me, sir, that on the day that you were doing the
cambering, on that process, Western Steel had the right to direct and control
your activities with regards to the cambering process?


A: Yes.


. . . .


Q: And you agree that Western Steel provided all the tools and machinery
to complete your work there.


A: Yes.


Q: You agree that they provided all the safety equipment, face shields, the
goggles, except for the gloves and work boots that you had yourself, correct?

 

A: Correct.


Q: And with regards to the specific cambering process, Western Steel's the
one who had the right to direct and control and instruct you on how to
camber the beams, correct?


A: Yes.


Q: Western Steel supervised you while you were cambering the beams. 
Remember, you testified that the supervisors stood there and watched you
do it?


A: Yes.


Q: Okay. So they had that right to direct and control that.


A: Yes.


. . . . 


Q: And Western Steel, the supervisors, could modify the way that you were
doing the work. They had the right to control and modify the way that you
were doing that work, correct?


A: Yes.


. . . .


Q: Okay. Now, sir, is it not true that, before you started the cambering
process, one of the Western Steel supervisors came up to you that morning
and said, We've got some beams and they're gonna need to be cambered,
correct?


A: Correct.


Q: And what they did is, they--this supervisor explained to you, generally, an
overall summary of what you were going to be doing, correct?


A: Yes.


Q: And after he gave you that overall summary, he assisted you in setting up
the work area, bringing the beams in, bringing the boards in and setting up
the three or four beams, correct?


A: I believe--When I arrived on the scene, I believe, the beams had already
been positioned.


Q: So, if Mr. Hedtke [a Western shop foreman] comes in here and says that
he worked with you in setting up the area for the purpose of cambering,-- 


A: Yes.


Q: --would he be correct?


A: Yes.


Q: Okay. And then, Mr. Hedtke said that he gave you specific instructions
and explained to you how you needed to camber these beams. That
occurred, correct?


A: Correct. 


 The evidence, including this testimony, established that Altenburg (1) was working
on Western's premises when he was injured; (2) was working in furtherance of Western's
day-to-day business; and (3) the details of the work that caused his injury were directed
by Western. (21) We conclude that there is legally insufficient evidence to sustain the jury's
finding that Altenburg was not Western's borrowed employee. (22) 

 We also conclude that this evidence established as a matter of law that Altenburg
was Western's borrowed employee. (23) We sustain Western's first issue. Because of our
disposition of Western's first issue, we need not reach its second issue. (24)

 We reverse the trial court's judgment and render judgment in Western's favor.


 

 LINDA REYNA YAÑEZ,

 Justice




Memorandum Opinion on Remand delivered 

and filed this the 10th day of April, 2008. 


 
1. The Honorable Errlinda Castillo, former Justice of this Court, did not participate in this memorandum
opinion because her term of office expired December 31, 2006. See Tex. R. App. P. 41.1(c).
2. Western Steel Co., Inc. v. Altenburg, 169 S.W.3d 347, 353 (Tex. App.-Corpus Christi 2005), rev'd
and remanded, 206 S.W.3d 121, 124 (Tex. 2006). Because our original opinion contains a description of the
factual background, we do not repeat the facts here. 
3. See Garza v. Exel Logistics, Inc., 161 S.W.3d 473, 481 (Tex. 2005).
4. Western Steel, 169 S.W.3d at 350-53. On original submission to this Court, the record contained
only a copy of Western's general liability insurance policy; it did not contain a copy of its workers'
compensation insurance policy.
5. Western Steel, 206 S.W.3d at 124. Despite Western's failure to submit evidence that it was covered
by workers' compensation insurance, the supreme court directed us to accept Western's assertion that it was
covered by workers' compensation insurance because Altenburg did not dispute it. See id. 
6. Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001). 
7. City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).
8. Francis, 46 S.W.3d at 241. 
9. City of Keller, 168 S.W.3d at 813. 
10. Id. at 827. 
11. Id. at 819.
12. Francis, 46 S.W.3d at 242. 
13. Id. 
14. Montemayor v. Ortiz, 208 S.W.3d 627, 647 (Tex. App.-Corpus Christi 2006, pet. denied) (citing
Glover v. Tex. Gen. Indem. Co., 619 S.W.2d 400, 401 (Tex. 1981)(per curiam)). 
15. Tex. Lab. Code Ann. § 408.001(a) (Vernon 2006). 
16. Western Steel, 206 S.W.3d at 123 (citing Wingfoot Enters. v. Alvarado, 111 S.W.3d 134, 143 (Tex.
2003) and Garza, 161 S.W.3d at 476). The "TWCA" is the Texas Workers' Compensation Act. See Tex.
Labor Code Ann. § 401.001 (Vernon 2006). 
17. Id. (citing Garza, 161 S.W.3d at 475-77).
18. Id. (quoting Garza, 161 S.W.3d at 477). 
19. Garza, 161 S.W.3d at 477; see also Bliss v. NRG Indus., 162 S.W.3d 434, 437 (Tex. App.-Dallas
2005, pet. denied) (applying Garza "traditional indicia"). 
20. "Cambering" involves heating a steel beam to cause it to bend in the middle. 
21. See Garza, 161 S.W.3d at 477; Bliss, 162 S.W.3d at 437. 
22. Francis, 46 S.W.3d at 241. 
23. See Francis, 46 S.W.3d at 241; Garza, 161 S.W.3d at 477; Bliss, 162 S.W.3d at 437. 
24. See Tex. R. App. P. 47.1.