# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00552-CV

**Rehabworks, LLC, Appellant**

**v.**

**Michael F. Flanagan, as Receiver for Century Care of America, Inc., Appellee[1]**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. DI-GN-07-002645, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

TC10 Grantor Trust ("TC10") filed a petition for judicial foreclosure of a secured lien on a nursing facility owned by Century Care of America, Inc. ("Century Care"). In addition to its request for foreclosure, TC10 also requested that the court appoint a receiver to oversee the transfer of the property so as to avoid an interruption of services provided to the residents at the facility. The court appointed Michael F. Flanagan as receiver. Rehabworks, LLC, a company that had provided therapy services to the residents at the nursing facility before the foreclosure and had not yet been paid for its services, brought suit against Century Care in Dallas County to recover payment for its services. The Dallas County court rendered judgment against Century Care in the amount of $169,116.15.

---

[1] On the notice of appeal and the judgment from which the appellant appeals, the style of the case reads as follows: "TC10 Grantor Trust vs. Century Care of America, Inc." However, the portion of the judgment from which the appellant appeals relates only to a dispute between Rehabworks, an intervenor, and Michael Flanagan, the receiver for Century Care of America. Thus, we have changed the style of the case to more accurately reflect the parties involved in the appeal.

1

After attempting unsuccessfully to recover on its judgment from Flanagan in his capacity as receiver, Rehabworks filed an intervention against Flanagan in the original foreclosure action, asserting a claim under section 64.051(5) of the Texas Civil Practice and Remedies Code[2] and claims of constructive trust, breach of third-party beneficiary contract, "money had and received," and quantum meruit. Flanagan filed a motion for summary judgment, and the trial court granted the motion with regard to Rehabworks's claim under section 64.051(5) and its claims of constructive trust and breach of third-party beneficiary contract, but denied the motion with regard to Rehabworks's "money had and received" and quantum meruit claims. Flanagan then filed a second summary-judgment motion, asserting that the doctrine of derived judicial immunity shielded him from suit on the remaining claims. The trial court granted Flanagan's motion, and Rehabworks appealed. Because we conclude that Flanagan is entitled to derived judicial immunity, we affirm the trial court's judgment.

## BACKGROUND

Rehabworks, a company providing physical and occupational therapy to nursing-home patients, treated patients at the Austin Nursing Center in April and May 2005. At the time, the nursing home was owned by Century Care. On May 25 of that year, TC10, Century Care's lender, filed suit against Century Care for judicial foreclosure of its lien and for appointment of a receiver. A short time later, the trial court appointed Flanagan as receiver. In November 2005, Rehabworks filed suit against Century Care in Dallas County to recover the money owed to it for

---

[2] Section 64.051 lists the types of claims that have a preference lien on the earnings of the property held by the receiver and mandates that the receiver pay the claims in the order listed. Tex. Civ. Prac. & Rem. Code Ann. § 64.051 (West 2007).

therapy services provided at the Austin Nursing Center in April and May 2005. The Dallas County court rendered judgment in favor of Rehabworks, awarding $169,116.15.

In December 2005, Flanagan submitted a cost report to Medicare on behalf of Austin Nursing Center requesting payment for services provided to Medicare patients for the fiscal year ending on July 31, 2005. Although the services in the cost report included therapy services provided by Rehabworks, Flanagan explained in his affidavit that the cost report did not categorize costs according to vendor or provider. Rather, the costs were categorized according to the type of service provided. Flanagan subsequently received a payment from Medicare, which was deposited in Austin Nursing Center's general operating account. In his deposition, Flanagan explained that because the receivership was still pending, he did not pay the judgment against Century Care, nor did he pay bills from any other unsecured creditors for services provided before the receivership began.[3] He stated that he planned to wait for the outcome of the receivership to determine whether Austin Nursing Center had enough funds remaining with which to pay unsecured creditors.

Rehabworks filed an intervention in the foreclosure action, asserting five claims against Flanagan, three of which were disposed of by summary judgment. Flanagan then filed a second summary-judgment motion asserting the affirmative defense of derived judicial immunity regarding Rehabworks's two remaining claims—"money had and received" and quantum meruit. The trial court granted the second motion, thus disposing of Rehabworks's remaining claims. In this appeal, Rehabworks challenges only the second summary judgment.

---

[3] Flanagan paid all claims made by Rehabworks for services provided after the receivership began on May 27, 2005.

3

## STANDARD OF REVIEW

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A defendant who moves for summary judgment on an affirmative defense must prove each element of its defense as a matter of law, leaving no issues of material fact. *Garza v. Exel Logistics, Inc.*, 161 S.W.3d 473, 475 n.10 (Tex. 2005) (citing *Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925, 927 (Tex. 1996)). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence*, 164 S.W.3d at 661.

## DISCUSSION

In its sole issue on appeal, Rehabworks contends that summary judgment was improper because Flanagan was not entitled to derived judicial immunity.[4] When a person is entitled to derived judicial immunity, he receives the same absolute immunity from liability for acts performed within the scope of his jurisdiction as that of a judge. *Dallas County v. Halsey*, 87 S.W.3d 552, 554 (Tex. 2002). Judicial immunity can attach to certain non-judges because the

---

[4] Rehabworks raises the following four issues in its brief: (1) whether Flanagan established each element of derived judicial immunity with regard to Rehabworks's "money had and received" claim; (2) whether Flanagan established each element of derived judicial immunity with regard to Rehabworks's quantum meruit claim; (3) whether there were genuine issues of material fact that precluded summary judgment with regard to Rehabworks's "money had and received" claim; and (4) whether there were genuine issues of material fact that precluded summary judgment with regard to Rehabworks's quantum meruit claim. Because we hold that Flanagan established his entitlement to derived judicial immunity as a matter of law, leaving no issues of material fact, we need not address each issue separately and instead reduce the issues to the one that decides them all. *See* Tex. R. App. P. 47.1 (requiring opinions to be as brief as practicable in addressing issues necessary to final disposition of appeal); *Garza v. Exel Logistics, Inc.*, 161 S.W.3d 473, 475 n.10 (Tex. 2005).

4

policy reasons for judicial immunity—protection of individual judges and of the public's interest in an independent judiciary—are also implicated when judges delegate their authority, appoint another to perform services for the court, or allow another to otherwise serve as an officer of the court. *Id*. In those circumstances, the immunity attaching to the judge follows the delegation, appointment, or court employment. *Id*. The person acting in such a capacity thus also enjoys absolute immunity, which is known as derived judicial immunity. *Id*.

Texas uses a "functional approach" to determine whether someone is entitled to derived judicial immunity. *Id*. at 556-57. The "functional approach looks to whether the person seeking immunity is intimately associated with the judicial process" and whether "that person exercises discretionary judgment comparable to that of the judge." *Id*. at 554 (citing *Delcourt v. Silverman*, 919 S.W.2d 777, 782 (Tex. App.—Houston [14th Dist.] 1996, writ denied)). The functional approach focuses on the nature of the function performed, not the identity of the actor, and considers whether the court officer's conduct is like that of the delegating or appointing judge. *Id*. at 555.

Flanagan contends that as a court-appointed receiver acting within the scope of his authority, he is entitled to derived judicial immunity. We agree. Like a court-appointed bankruptcy trustee acting within his authority as trustee, a court-appointed receiver acts as an arm of the court and is immune from liability for actions grounded in his conduct as receiver. *See Clements v. Barnes*, 834 S.W.2d 45, 46 (Tex. 1992) (court-appointed bankruptcy trustees acting within scope of authority entitled to derived judicial immunity); *Alpert v. Gerstner*, 232 S.W.3d 117, 130-31 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (court-appointed receiver entitled to derived judicial immunity for all acts authorized by court, but not for breach of fiduciary duties);

5

*Spigener v. Wallis*, 80 S.W.3d 174, 183 (Tex. App.—Waco 2002, no pet.) (characterizing court-appointed receiver as agent of court).[5] Here, the court issued an order appointing Flanagan as receiver and stating the following:

> [Flanagan] shall be authorized, subject to control of this court, to do any and all acts necessary to the proper and lawful conduct of the receivership, including the following:
>
> (a) Take charge and keep possession of the Property and the Collateral, including, but not limited to management and operation of the Austin Nursing [Center];
>
> (b) Receive income from the Property and the Collateral;
>
> (c) Collect and compromise demands;
>
> (d) Make transfers of or regarding the personal property included in any of the Collateral located on the Property;
>
> (e) Invest any funds held as receiver in an interest bearing account;
>
> (f) Enter into, as well as terminate contracts regarding the Property and the Collateral;
>
> (g) Employ, as well as terminate the employ, of persons working at or with the Property;
>
> (h) Take any and all actions necessary to preserve the income to and value of the Property and the Collateral, as well as the Austin Nursing [Center];

---

[5] We note that derived judicial immunity provides broad protection. "Once an individual is cloaked with derived judicial immunity because of a particular function being performed for a court, every action taken with regard to that function—whether good or bad, honest or dishonest, well-intentioned or not—is immune from suit. Once applied to the function, the cloak of immunity covers all acts, both good and bad." *Ramirez v. Burnside & Rishebarger, L.L.C.*, No. 04-04-00160-CV, 2005 Tex. App. LEXIS 6065, at *5 (Tex. App.—San Antonio Aug. 3, 2005, no pet.) (mem. op.) (citing *B.K. v. Cox*, 116 S.W.3d 351, 357 (Tex. App.—Houston [14th Dist.] 2003, no pet.)).

(i) Take any and all actions necessary to market the Property and the Collateral for the highest and best value;

(j) Perform any other acts necessary for the health, welfare and well-being of the Austin Nursing [Center's] residents, including operating the facility in compliance with the regulations and other standards of the Texas Department of Aging and Disability Services;

(k) Perform any other acts in regard to the Property and the Collateral as authorized by this Court.

Among further specifics in the order, the court ordered that "money coming into the possession of the receiver and not expended for any of the purposes authorized herein shall be held by the receiver subject to such orders as this court may hereafter issue."

Flanagan's actions in submitting a cost report to Medicare, accepting Medicare's subsequent payment, and declining to pay Rehabworks from the funds he received were all within the scope of his authority as receiver because they all related to receiving and preserving the income and value of Austin Nursing Center until the court issued further orders. The court's order also gave Flanagan considerable discretion in identifying the acts necessary to preserve the income to the property, market the property, and care for the residents of the nursing facility. All of these acts were done within the context of the receivership action, which was ultimately overseen by the trial court and subject to the court's further rulings. Thus, we conclude that Flanagan served as an arm of the court in maximizing both the value of the property and the care given to facility residents while the court oversaw a transition of the facility to new ownership. Accordingly, under the functional approach set forth in *Halsey*, Flanagan is entitled to derived judicial immunity from liability for

Rehabworks's claims as a matter of law.[6] *See Halsey*, 87 S.W.3d at 554; *Clements*, 834 S.W.2d at 46; *Alpert*, 232 S.W.3d at 130-31.

Rehabworks also argues that both of its causes of action—"money had and received" and quantum meruit—are implied-contract claims and that a defendant does not enjoy immunity regarding contract claims. In support of its contention that its claims are implied-contract claims, Rehabworks cites *Amoco Production Company v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ). In *Amoco*, the court explained that a cause of action for "money had and received" belongs within the doctrine of unjust enrichment, which gives rise to an implied or quasi-contractual obligation to return benefits when a person is unjustly enriched by benefits that belong to another. *Id*. The *Amoco* court did not address quantum meruit claims. Even assuming, without deciding, that both of Rehabworks's claims are implied-contract claims, Rehabworks does not cite to, and we have not found, any authority supporting the proposition that a defendant is not entitled to derived judicial immunity for implied-contract claims. Although Rehabworks cites two Texas Supreme Court cases, neither one supports its contention. *See General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001); *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 408 (Tex. 1997). Both of the cases address sovereign immunity, not derived judicial immunity, and both cases focus only on contracts between the state and a private citizen. Neither case mentions implied contracts

---

[6] Rehabworks also contends that summary judgment was improper because Flanagan failed to attach evidence to his summary-judgment motion establishing that he was performing a "judicial-type service" when he refused to pay Rehabworks's judgment. As summary-judgment evidence, Flanagan attached the court order appointing him as receiver, most of which we have previously quoted in this opinion. Rehabworks argues that in addition to the order, Flanagan should have attached further evidence establishing that his actual acts were "judicial-type services." Because we hold that Flanagan is entitled to derived judicial immunity as a matter of law, and because we base our holding on our conclusion that the acts of which Rehabworks complains fall within the authority granted in the order, we reject Rehabworks's argument.

or contracts with a court-appointed receiver. Because we find no authority supporting Rehabworks's contention, we reject this argument on appeal.

Rehabworks also asserts that Flanagan could not be entitled to derived judicial immunity because the legislature specifically authorizes suits against receivers. Rehabworks is correct that the legislature authorizes suits against receivers. *See* Tex. Civ. Prac. & Rem. Code Ann. § 64.052 (West 2007) (stating that receiver holding property in Texas may be sued in official capacity without permission of appointing court). However, section 64.052 does not permit *all* suits against receivers. We have already concluded that derived judicial immunity shields a court-appointed receiver from suit in this case, where the receiver acts as an arm of the court and the suit is based on actions taken within the scope of the receiver's authority. Thus, although some suits against receivers are permitted, this suit is not. *Compare Alpert*, 232 S.W.3d at 130-31 (suit permitted against court-appointed receiver for breach of fiduciary duties), *with Ramirez v. Burnside & Rishebarger, L.L.C.*, No. 04-04-00160-CV, 2005 Tex. App. LEXIS 6065, *4-5 (Tex. App.—San Antonio Aug. 3, 2005, no pet.) (mem. op.) (suit not permitted against court-appointed receiver for actions related to selling property from receivership estate). We therefore reject Rehabworks's argument.

In another argument, Rehabworks contends that summary judgment was improper because there is a genuine issue of fact as to whether Flanagan was performing "judicial-type services" when he managed and operated Austin Nursing Center's assets and when he failed to pay Rehabworks's judgment. However, we have already determined that the acts of which Rehabworks complains—that Flanagan submitted a cost report to Medicare that included therapy services provided by Rehabworks, that he received payment from Medicare, and that he did not pay

9

Rehabworks from the funds received from Medicare—were within the scope of Flanagan's authority and done while he was serving as an arm of the court. Because we have determined as a matter of law that Flanagan is entitled to derived judicial immunity for those acts, there is no issue of material fact precluding summary judgment. We therefore reject Rehabworks's argument.

Rehabworks also asserts two arguments in its reply brief that it did not raise in its initial brief. Specifically, Rehabworks argues that Flanagan is not entitled to derived judicial immunity because: (1) he violated a federal regulation, 42 C.F.R. § 413.100 (2009), when he decided to keep the funds he received from Medicare and not disburse some of them to Rehabworks in payment for its therapy services; and (2) he is entitled to immunity only in his individual capacity, not in his official capacity. In a reply brief, an appellant may respond only to matters raised in an appellee's brief. Tex. R. App. P. 38.3; *Sunbeam Envtl. Servs. v. Texas Workers' Comp. Ins. Facility*, 71 S.W.3d 846, 851 (Tex. App.—Austin 2002, no pet.). Because Rehabworks did not raise the arguments in its initial brief and Flanagan did not raise them in his brief, Rehabworks has waived these arguments on appeal.

## CONCLUSION

Because we conclude that Flanagan is entitled to derived judicial immunity from Rehabworks's claims, we affirm the trial court's judgment.

_____

Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed: February 26, 2009

10