

NUMBER 13-08-00254-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

KATHRYN ANN RACKLEY, **Appellant,**

**v.**

ADVANCED CYCLING CONCEPTS INC.
D/B/A PUMP IT UP, **Appellee.**

**On appeal from the 44th District Court of Dallas County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Justice Garza**

Appellant, Kathryn Ann Rackley, appeals from a summary judgment granted in favor of appellee, Advanced Cycling Concepts, Inc. d/b/a Pump It Up ("ACC"). By one issue, Rackley contends that the trial court erred in granting ACC's motion for summary judgment because ACC failed to conclusively establish its affirmative defenses of release and express assumption of risk. We affirm.

## I. BACKGROUND

On or about May 6, 2006, Rackley sustained personal injuries at a children's party

at one of ACC's "Pump It Up" facilities in Dallas, Texas.[1]  Rackley contends that she was helping her young son on a slide when "[ACC]'s employees failed to keep the base of the slide cleared, causing [Rackley] to exit the slide from its side in order to avoid young children at the base of the slide."

Rackley filed suit on April 2, 2007, alleging that ACC was negligent in:  (1) failing to properly and continuously supervise a dangerous activity"; (2) "failing to warn [Rackley] of the unsafe condition"; and (3) "failing to inspect, discovery [sic], and remedy the condition of the slide."  According to Rackley, these failures caused her to suffer "seriously [sic] injuries to her right knee and body in general."

On April 13, 2007, ACC filed its original answer, generally denying Rackley's allegations and asserting the affirmative defenses of express assumption of risk, waiver, release, and contributory negligence.  ACC noted that, prior to using the facility, Rackley had signed a release form stating as follows:

> **In consideration of being allowed to enter into the play area and/or participate in any party and/or program at Pump It Up of Dallas, TX, the undersigned, on his or her own behalf, and/or on behalf of the participant(s) identified below, acknowledges, appreciates, and agrees to the following conditions:**
>
> I, the parent/legal guardian of the participant(s), agree that the participant(s) and I shall comply with the stated and customary terms, rules and conditions for participation in any party and/or program at Pump It Up.  In addition, if I observe any hazard during our participation, I will bring it to the attention of the nearest official immediately;
>
> I am aware that participation in Pump It Up programs, parties, and/or use of the play area and inflatable equipment creates a risk of injury, and I, on behalf of myself and the participant's [sic], knowingly and freely assume all such risks, both known and unknown, even if arising from the negligence of others; and,
>
> I, for myself and the participant(s), and our respective heirs, assigns, administrators, personal representatives, and next of kin, hereby release and hold harmless A.C.C., Inc. dba Pump It Up and PIU Management, LLC, their affiliates, officers, members, agents, employees, other participants, and

---

[1] "Pump It Up" is a chain of children's party venues featuring inflatable houses, slides, and obstacle courses.  The company's promotional website explains:  "Pump It Up has discovered the missing ingredient in children's parties.  Air. . . . Just got a bunch of kids?  Well, we've got a happytastic place to set them loose."  *See* About Pump It Up, http://www.pumpitupparty.com/AboutPIUPage.aspx (last visited Mar. 13, 2009).

2

sponsoring agencies from and against any and all claims, injuries, liabilities or damages arising out of or related to participation in any and all Pump It Up programs, activities, parties, the use of the play area and/or inflatable equipment.

(Emphasis in original.)

In her response to requests for admission propounded by ACC, Rackley admitted that she signed the release form, but gave conflicting answers as to whether she read the form in its entirety prior to signing it.[2] Rackley also admitted that she watched a "Pump It Up safety video" prior to entering the play area and that she "did not follow the rules and/or instructions as set forth" in the video. Further, despite the contentions made in her pleadings, Rackley denied that she "exited the slide by climbing over the side of the slide."

ACC moved for traditional summary judgment on September 24, 2007, asserting that it was entitled to judgment as a matter of law on its affirmative defense of release. ACC subsequently filed an amended motion for traditional summary judgment on November 28, 2007, adding a contention that it had also established its affirmative defense of express assumption of risk.[3] On January 31, 2008, the trial court rendered judgment granting ACC's amended motion "in all respects" and stating that Rackley's negligence claim "fails as a matter of law." This appeal followed.

---

[2] Rackley provided the following responses to two identical requests for admissions:

**REQUEST FOR ADMISSIONS NO. 17:** You read the document attached hereto as Exhibit "A" [the release form] prior to signing it.
**RESPONSE:**
　　Admitted.

　. . . .

**REQUEST FOR ADMISSIONS NO. 25:** You read the document attached hereto as Exhibit "A" [the release form] prior to signing it.
**RESPONSE:**
　　Denied, not in its entirety.

(Emphasis in original.)

[3] In its amended motion for summary judgment, ACC asserted that Rackley's claim "is barred by the affirmative defense of assumption of risk." We note, however, that implied assumption of risk has been abolished as a complete affirmative defense in Texas. *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 759 (Tex. 1975); *see Davis v. Greer*, 940 S.W.2d 582, 582 (Tex. 1996). Accordingly, we construe ACC's amended motion as asserting the affirmative defense of express assumption of risk.

## II. DISCUSSION

### A. Standard of Review

We review a trial court's grant or denial of a traditional motion for summary judgment under a de novo standard of review. *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 n.7 (Tex. 2005) (citing *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 290 n.137 (Tex. 2004)); *Alaniz v. Hoyt*, 105 S.W.3d 330, 345 (Tex. App.–Corpus Christi 2003, no pet.). To obtain relief via a traditional motion for summary judgment, the movant must establish that no material fact issue exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Garza v. Exel Logistics, Inc.*, 161 S.W.3d 473, 475 n.10 (Tex. 2005) ("[A] defendant moving for summary judgment on an affirmative defense must prove each element of its defense as a matter of law, leaving no issues of material fact."); *Mowbray v. Avery*, 76 S.W.3d 663, 690 (Tex. App.–Corpus Christi 2002, pet. denied). After the movant produces evidence sufficient to show it is entitled to summary judgment, the non-movant must then present evidence raising a fact issue. *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). In deciding whether there is a disputed fact issue that precludes summary judgment, evidence favorable to the non-movant will be taken as true. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997) (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985)). Evidence favorable to the movant, however, will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965). Moreover, every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Grinnell*, 951 S.W.2d at 425 (citing *Nixon*, 690 S.W.2d at 549).

### B. Applicable Law

An agreement purporting to absolve a party of the consequences of its own negligence is not enforceable unless it conforms to the twin fair notice requirements of (1) conspicuousness and (2) the express negligence doctrine. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 507 (Tex. 1993); *Enserch Corp. v. Parker*, 794 S.W.2d

4

2, 9 (Tex. 1990). A contract which fails to satisfy either of the fair notice requirements when they are imposed is unenforceable as a matter of law. *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004). However, if both contracting parties have actual knowledge of the contract's terms, the fair notice requirements need not be satisfied. *Id.* (citing *Dresser Indus.*, 853 S.W.2d at 508 n.2).

The conspicuousness requirement mandates that "something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it." *Id.* (quoting *Dresser Indus.*, 853 S.W.2d at 508); *Amtech Elevator Servs. Co. v. CSFB 1998-P1 Buffalo Speedway Office Ltd. P'ship*, 248 S.W.3d 373, 377 (Tex. App.–Houston [1st Dist.] 2007, no pet.). A term is conspicuous when it is written, displayed, or presented such that a reasonable person against which it is to operate ought to have noticed it. TEX. BUS. & COM. CODE ANN. § 1.201(b)(10) (Vernon Supp. 2008) (listing ways to make a term conspicuous).

Under the express negligence doctrine, an intent to release one of the parties from the consequences of its own negligence "must be specifically stated in the four corners of the document." *Reyes*, 134 S.W.3d at 192 (quoting *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 707 (Tex. 1987)); *Amtech*, 248 S.W.3d at 377. Moreover, the intent to release "must be expressed in unambiguous terms." *OXY USA, Inc. v. Sw. Energy Prod. Co.*, 161 S.W.3d 277, 282 (Tex. App.–Corpus Christi 2005, pet. denied); *see also ALCOA v. Hydrochem Indus. Servs.*, No. 13-02-00531-CV, 2005 Tex. App. LEXIS 2010, at *20-21 (Tex. App.–Corpus Christi Mar. 17, 2005, pet. denied) (mem. op., not designated for publication) ("Express negligence does not mandate that in order for an indemnity clause to be enforceable it must be the best or the briefest possible statement of the parties' intentions, only that it specifically define the parties' intent.").

Whether an agreement meets either fair notice requirement is a question of law for the court. *Dresser Indus.*, 853 S.W.2d at 509. The requirements apply to any agreement—whether labeled as an indemnification, release, waiver, or otherwise—that

purports to shift the risk of the defendant's negligence to the plaintiff. *Id.* at 508, 509. They must be satisfied in order to establish the defenses of release and express assumption of risk. *See id.* at 509 (applying fair notice requirements to releases); *Polley v. Odom*, 957 S.W.2d 932, 938 (Tex. App.–Waco 1997, no pet.) (applying fair notice requirements to agreement under which plaintiff agreed to "assume all risk of loss"), *vacated on other grounds*, 963 S.W.2d 917, 918 (Tex. App.–Waco 1998, no pet.).

## C.     Analysis

Rackley does not dispute that the release form meets the fair notice requirement of conspicuousness. *See Enserch*, 794 S.W.2d at 9.[4] Moreover, Rackley conceded in her responses to ACC's request for admissions that she signed the release form prior to using ACC's facilities and sustaining her injuries. The sole question before us, therefore, is whether the release form complies with the express negligence doctrine. Rackley claims that the form does not so comply, noting that "it requires the reader to infer that [ACC] is being released for its own negligence, and requires the reader to infer that Rackley is assuming the risk of injury from [ACC]'s own negligence."

Rackley directs us to two passages in the release form and asserts that they each fail to comply with the express negligence doctrine. First, Rackley points to the third paragraph of the release form, which states that "I . . . knowingly and freely assume all such risks, both known and unknown, even if arising from the *negligence of others* . . ." (emphasis added). Rackley claims that this statement does not comport with the express negligence doctrine because it "refers to the negligence of third parties, and not to the

---

[4] In *Enserch*, the supreme court considered whether an indemnity provision was "conspicuous." Its findings, equally applicable to the release form in the instant case, were as follows:

> The entire contract . . . consists of one page; the indemnity language is on the front side of the contract and is not hidden under a separate heading. The exculpatory language and the indemnity language, although contained in separate sentences, appear together in the same paragraph and the indemnity language is not surrounded by completely unrelated terms. Consequently, the indemnity language is sufficiently conspicuous to afford "fair notice" of its existence.

*Enserch Corp. v. Parker*, 794 S.W.2d 2, 9 (Tex. 1990).

negligence of [ACC]."

In support of this contention, Rackley cites two cases where courts have suggested that the phrase "the negligence of others" refers strictly to the negligence of third parties. *See Farmers Tex. County Mut. Ins. Co. v. Griffin*, 868 S.W.2d 861, 865-66 (Tex. App.–Dallas 1993, writ denied) (involving uninsured/underinsured motorists ("UIM") coverage in automobile insurance policies); *Scarborough v. Employers Cas. Co.*, 820 S.W.2d 32, 34 (Tex. App.–Fort Worth 1991, writ denied) (same). Rackley urges that the third paragraph of the release form likewise applies only to the negligence of third parties and not to the negligence of ACC. We disagree.

Both cases cited by Rackley are inapposite here. In *Scarborough*, the appellant insured was injured in an accident in which her husband, who was covered under appellant's policy, was the driver. 820 S.W.2d at 33. The appellant contended that the terms of her policy, which denied UIM coverage, violated article 5.06-1 of the insurance code. *Id.*; *see* TEX. INS. CODE ANN. art 5.06-1, § 1 (Vernon 1981). The appellant urged the court to consider the policy argument made in an earlier case that, by purchasing UIM coverage, "'the insured has expressed an intent not only to protect others from his or her own negligence but also to protect that person's *own family* and guests from the negligence of *others*.'" *Scarborough*, 820 S.W.2d at 34 (quoting *Stracener v. United Servs. Auto. Ass'n*, 777 S.W.2d 378, 384 (Tex. 1989)) (emphasis in original). The court held that the policy terms were not violative of the statute, noting that "[t]he instant case is factually different [from *Stracener*] . . . as the appellant or her husband driver is the above 'own family,' and we see the negligence of 'others' as meaning the negligence of strangers to the policyholder's family, not appellant's husband." *Id.*

Rackley interprets this holding as an indication that the word "others" in a contract cannot refer to any party to that contract; we disagree. Although the *Scarborough* court held that "others" could not refer to an insured's family member who was also an insured under the policy, the court did not say that the word could not refer to any *other party* to the

7

insurance policy, such as the insurer itself.

The *Griffin* case is similarly unhelpful to our analysis. The court in that case stated that in the context of UIM insurance coverage, the word "others" *must* mean third parties; otherwise "UIM coverage would automatically become a second layer of liability insurance, protecting family members from each other's negligent driving." *Griffin*, 868 S.W.2d at 868. Here, the plain meaning of the third paragraph of the release form indicates that it applies to claims which may arise from the negligence of *any party* other than Rackley, including ACC. There is no reason, as there may be in the case of UIM insurance coverage, to infer that "the negligence of others" excludes the negligence of the other party to the contract. We find that the third paragraph of the release form is unambiguous and satisfies the express negligence doctrine.

The second passage of the release form that Rackley takes issue with is the form's final clause, which states that ACC is released "from and against any and all claims, injuries, liabilities or damages arising out of or related to participation in any and all Pump It Up programs, activities, parties, the use of the play area and/or inflatable equipment." Rackley claims that the lack of the word "negligence" or any of its cognates in the clause renders it unenforceable under the express negligence doctrine. Again, we disagree.

Though it is true that the final clause does not contain the word "negligence," Rackley has pointed to no authority stating that inclusion of this word is specifically necessary for the clause to be enforceable. Instead, the law merely provides that the intent to shift the risk of one party's negligence to the other party be "specifically stated," *see Reyes*, 134 S.W.3d at 192, and "unambiguous," *see OXY USA*, 161 S.W.3d at 282. The final clause specifically states that it applies to "any and all claims" Rackley may have against ACC arising out of her use of the Pump It Up facility. Moreover, the clause is unambiguous—not only does it absolve ACC of the consequences of its own *negligence*, but it also releases ACC from liability with respect to claims based on any other theory of

8

recovery.[5] Because the intent to shift the risk of ACC's negligence to Rackley is specifically and unambiguously stated in the release form, the form satisfies the express negligence doctrine. *See Reyes*, 134 S.W.3d at 192; *OXY USA*, 161 S.W.3d at 282.

We conclude that the release form met both fair notice requirements; therefore, ACC established its affirmative defenses as a matter of law. Further, because it was uncontroverted that Rackley executed the release form prior to using ACC's facility and sustaining her injuries, there are no outstanding issues of material fact. Accordingly, the trial court did not err in granting ACC's amended motion for traditional summary judgment. *See* TEX. R. CIV. P. 166a(c); *Garza*, 161 S.W.3d at 475 n.10; *Mowbray*, 76 S.W.3d at 690. Rackley's sole issue is overruled.

### III. CONCLUSION

We affirm the judgment of the trial court.

DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 19th day of March, 2009.

---

[5] Rackley notes correctly that ACC could have left no doubt as to the enforceability of the release form had it simply inserted the a phrase akin to "including claims arising out of the negligence of ACC, its officers, agents and employees." However, the fact that the form was imperfectly drafted has no bearing on the question of whether it provided specific and unambiguous "fair notice" of ACC's intent.

9