NUMBER 13-08-00150-CV


COURT OF APPEALS


THIRTEENTH DISTRICT OF TEXAS


CORPUS CHRISTI - EDINBURG 

 


PORT ELEVATOR-BROWNSVILLE, L.L.C., Appellant,


v.


ROGELIO CASADOS AND RAFAELA CASADOS,

INDIVIDUALLY AND AS REPRESENTATIVE OF 

THE ESTATE OF THEIR SON, RAFAEL CASADOS, Appellees.

 




On appeal from the 404th District Court of 


Cameron County, Texas.

 


O P I N I O N



Before Chief Justice Valdez and Justices Yañez and Vela


Opinion by Justice Yañez
 By a single issue, appellant, Port Elevator-Brownsville, L.L.C. ("Port Elevator"),
contends the trial court erred in denying its motion for summary judgment and in granting
the cross-motion for partial summary judgment filed by appellees, Rogelio and Rafaela
Casados. (1) Specifically, Port Elevator contends that appellees' claims against it are barred
by the exclusive remedy provision of the Texas Workers' Compensation Act ("TWCA"). (2) 
We affirm. I. Background 


 Staff Force, Inc. ("Staff Force") is a temporary employment agency that hires
temporary workers and assigns them to work for its client companies. (3) Rafael Casados

was hired by Staff Force and assigned to work at Port Elevator's grain storage facility at
the Port of Brownsville. Shortly after his assignment to Port Elevator's facility, Casados
died when he was buried beneath twenty feet of grain. (4) 

 Appellees sued Port Elevator, Staff Force, and others for wrongful death. (5) Port
Elevator filed a traditional and no-evidence motion for summary judgment. In its traditional
motion, Port Elevator argued that: (1) Casados was Port Elevator's employee; (2) at the
time of Casados's death, Port Elevator was a subscriber to workers' compensation
insurance; and (3) appellees' claims are therefore barred by the exclusive remedy provision
of the workers' compensation statute. Port Elevator also argued that appellees are barred
from recovering exemplary damages because they are not "within the defined class of
beneficiaries who may recover exemplary damages" under the statute. (6) As summary
judgment evidence, Port Elevator attached: (1) the affidavit of its general manager, Craig
Elkins; (2) the declarations page of its insurance policy; and (3) excerpts from the
deposition testimony of its employee, Javier Saldivar. In its second supplemental motion,
Port Elevator provided a complete copy of its insurance policy. Port Elevator also argued
that appellees' claims were barred because Staff Force's workers' compensation carrier
paid all available benefits. (7)

 In the no-evidence section of its motion, Port Elevator argued that the Texas
Department of Insurance, Division of Workers' Compensation has exclusive jurisdiction to
determine compensability and there is "no evidence that [appellees] have exhausted their
administrative remedies as required."

 Appellees filed a response to Port Elevator's motion and a cross-motion for partial
summary judgment on Port Elevator's affirmative defenses. In their traditional and no-evidence motion, appellees argued that as a temporary worker, Casados was not covered
under Port Elevator's workers' compensation policy. Specifically, appellees argued that
(1) the exclusive remedy provision is an affirmative defense for which Port Elevator bore
the burden of proof, and (2) Port Elevator had no evidence that it paid a workers'
compensation insurance premium covering Casados and other temporary employees. 
Appellees also argued that they were not required to exhaust their administrative remedies
because they were not seeking workers' compensation benefits. As summary judgment
evidence, appellees attached: (1) Port Elevator's responses to appellees' discovery
requests; (2) the deposition testimony of Elkins; (3) the deposition testimony of Veronica
Castro, then branch manager of Staff Force's Brownsville office; (4) a Staff Force work
order reflecting Casados's classification code; (5) Casados's "First Report of Injury" form;
and (6) an affidavit from appellees' attorney. Appellees filed an "Amended Motion for
Partial Summary Judgment," in which they argued that the exclusive-remedy affirmative
defense was not available to Port Elevator because its workers' compensation policy did
not cover the temporary employees it obtained from Staff Force. Appellees also asserted
that they were entitled to a no-evidence partial summary judgment because Port Elevator
has no evidence that it was a subscriber to a policy that covered Casados. As additional
summary judgment evidence, appellees attached: (1) Port Elevator's second supplemental
responses to appellee's requests for disclosure; and (2) the deposition testimony of Ernest
Stokey, a vice president of Texas Mutual Insurance Company, Port Elevator's workers'
compensation carrier. Appellees and Port Elevator also filed various responses,
supplemental responses, and replies, and submitted additional evidence. 

 The trial court denied Port Elevator's motion for summary judgment and granted
appellees' amended motion for partial summary judgment. A jury found Port Elevator liable
for negligence and awarded appellees and Casados's estate approximately $2.7 million
in damages. The trial court entered judgment on the verdict. Port Elevator filed a motion
for reconsideration of the trial court's rulings on the motions for summary judgment and a
motion for judgment notwithstanding the verdict, both of which the trial court denied. This
appeal ensued.

II. Standard of Review and Applicable Law 


 Here, both Port Elevator's motion for summary judgment and appellees' amended
cross-motion for partial summary judgment were combined "traditional" and "no-evidence"
motions. We review the trial court's grant of summary judgment de novo. (8) "When, as
here, both parties file a motion for summary judgment with the trial court, and one is
granted and one is denied, the reviewing court determines all questions presented and
renders the judgment that should have been rendered by the trial court." (9) When the trial
court does not specify the basis for its ruling, it is the appellant's burden on appeal to show
that none of the independent grounds that were asserted in support of summary judgment
is sufficient to support the judgment. (10) Thus, when the trial court's order granting summary
judgment does not specify the grounds on which it was granted, we will affirm the summary
judgment if any of the advanced theories support the judgment. (11) 

 As the Texas Supreme Court recently noted,

The purpose of the Texas Workers' Compensation Act is to provide
employees with certainty that their medical bills and lost wages will be
covered if they are injured. An employee benefits from workers'
compensation insurance because it saves the time and litigation expense
inherent in proving fault in a common law tort claim. But a subscribing
employer also receives a benefit because it is then entitled to assert the
statutory exclusive remedy defense against the tort claims of its employees
for job related injuries.[ (12)] 


 The exclusive remedy provision provides that, "[r]ecovery of workers' compensation
benefits is the exclusive remedy of an employee covered by workers' compensation
insurance coverage . . . for the death of or a work-related injury sustained by the
employee." (13) When a defendant moves for summary judgment based on an affirmative
defense, like the exclusive remedies provision of the TWCA, the defendant must
conclusively prove each element of the defense as a matter of law. (14) Thus, Port Elevator
had the summary judgment burden of proving its exclusive-remedy affirmative defense as
a matter of law. (15) The Texas Supreme Court has recognized that temporary employees,
like Casados, may have more than one employer for the purposes of the TWCA and its
exclusive remedy provision. (16) A borrowed servant is properly covered by the borrowing
employer's workers' compensation insurance. (17) Here, in order to be entitled to the
exclusive-remedy affirmative defense, Port Elevator was required to plead and prove: (1)
Casados was its borrowed servant; (2) he was entitled to workers' compensation benefits;
and (3) Port Elevator had workers' compensation insurance that covered claims asserted
by borrowed servants. (18)

III. Discussion 


 We begin by addressing whether Port Elevator met its burden to establish its
exclusive-remedy affirmative defense as a matter of law. (19) In its motion for summary
judgment and on appeal, Port Elevator argued that it was entitled to the exclusive-remedy
affirmative defense because it established that: (1) Casados was its employee (which is
undisputed); and (2) at the time of Casados's death, it was a subscriber to workers'
compensation insurance. In support of its position, Port Elevator cites Garza v. Exel
Logistics, Inc. (20) Port Elevator argues that because "an employer may not split its workforce
by providing workers' compensation insurance to some workers while leaving others
without coverage," all of its employees--including Casados--were covered by its workers'
compensation policy. Essentially, Port Elevator's position is that if it purchased workers'
compensation insurance for one of its employees, then all of its employees are
covered--regardless of whether it intended to cover all of its employees, whether the code
classifications in the policy reflect coverage for all employees, and whether it paid
premiums for temporary employees like Casados. 

 In its response and on appeal, appellees contend that Port Elevator was required
to establish not only that it was a subscriber to workers' compensation insurance, but that
Casados was an employee covered by Port Elevator's policy. Thus, the controlling
question before the trial court, and now before this Court, is whether Port Elevator indeed
could meet its burden by establishing only that (1) Casados was its employee and (2) it
was a subscriber to workers' compensation insurance.

 We begin by examining Port Elevator's argument and summary judgment evidence. 
Port Elevator submitted the affidavit of Elkins, which stated that: (1) Port Elevator was a
subscriber to workers' compensation insurance, and (2) Casados was Port Elevator's
employee at the time of his death. It also submitted excerpts from the deposition testimony
of Saldivar, which shows that: (1) on the day he died, Casados was removing grain from
a bulkhead door; and (2) all of Port Elevator's employees--including its temporary
employees--were a "necessary" part of Port Elevator's grain elevator operations. With
respect to the controlling issue, Port Elevator submitted its insurance policy, issued by its
carrier, Texas Mutual Insurance Company ("Texas Mutual"). The policy reflects that Port
Elevator was a subscriber to workers' compensation insurance covering its operations in
Texas for the relevant policy period. (21) The information page of the policy, which lists the
classification codes describing the type of work performed by the employees, lists only two
classifications: "clerical office employees" and "grain elevator operation & local managers,
drivers." With regard to the information page, Port Elevator makes two arguments: (1)
Casados was included in the category of employees working in support of grain elevator
operations; and (2) classification codes do not establish coverage, but merely govern
premium calculations. 

 In support of its argument that an employer may not "split" its workforce by covering
some of its employees and not covering others, Port Elevator cites Texas Workers'
Compensation Insurance Fund v. Del Industrial, Inc., (22) Maryland Casualty Co. v. Sullivan, (23)
and Texas Employers' Insurance Ass'n v. Stanton. (24)

 Appellees respond that the supreme court in Del Industrial also recognized that the
case law in this area is dated and noted that "the Texas cases prohibiting 'split workforces'
do not address staff-leasing relationships, and were decided prior to the Legislature's
passage of the SLSA." (25) Appellees further argue that Sullivan and Stanton are
distinguishable because neither case addresses workers' compensation in the context of
temporary employees. 

 In Del Industrial, the supreme court held that "the Staff Leasing Services Act does
not require a [client] company that purchases workers' compensation insurance for its
employees to pay premiums for employees whom the company leases from a staff leasing
company when the staff leasing company declines to purchase coverage for those leased
workers." (26) Thus, in construing the provisions of the SLSA, the court permitted "the
practical effect" that only part of the employer's work force (the direct non-leased-employee
part) was covered by workers' compensation insurance. (27) 

 Del Industrial is distinguishable from the present case because it involved a "staff-leasing relationship" between a staff-leasing company and its client company pursuant to
the SLSA. (28) In the present case, Staff Force is not a staff leasing company within the
purview of the SLSA. (29) Thus, although Del Industrial is distinguishable from the facts
before us, we recognize that it supports Port Elevator's position that non-SLSA-governed
cases--like the present case--are subject to the general rule "that an employer may not
split its workforce by providing workers' compensation insurance to some workers while
leaving others without coverage." (30)

 We next address the evidence presented by appellees. Appellees contend that Port
Elevator's workers' compensation policy covered only its direct employees, not its
temporary employees like Casados. Appellees argue that to establish its exclusive remedy
affirmative defense, Port Elevator must show not only that it is a subscriber to workers'
compensation insurance, but that Casados was "an employee covered by workers'
compensation insurance coverage." (31)

 Appellees point to the information page of Port Elevator's policy, which lists the
classification codes of covered employees: "8810" for "clerical office employees" and
"8304" for "grain elevator operation & local managers, drivers." Appellees assert that as
a temporary laborer, Casados fit into neither category, and was therefore not covered by
the policy. In support, appellees cite the deposition testimony of Elkins, who testified that
Casados was a "laborer," not a "manager," an "operator," or "clerical staff." Appellees also
provided Staff Force's work order assigning Casados to Port Elevator; the work order
identifies Casados's workers' compensation classification code as "5160." The
classification code "5160" does not appear on the information page of Port Elevator's
insurance policy showing covered employees. (32) 

 Appellees also rely on the deposition testimony of Stokey, "vice president of
premium audit and premium recovery" at Texas Mutual, Port Elevator's workers'
compensation carrier. Stokey explained that his duties include "securing payroll
information from our policyholders to determine what their premiums are due [sic] based
on their organization, their activity, as well as their payroll." Stokey testified, in relevant
part, as follows:

Q [by appellees' counsel]: Do you know whether or not Staff Force
employees were included in the calculations of Port Elevator-Brownsville,
L.C.'s Workers' Comp premiums?


A [Stokey]: Yes, I know. 


Q: Were they?


A: No.


Q: Should they have been, in your opinion?


A: No.


Q: Why not?


A: Because from what we--what we've seen, that Staff Force has their own
Workers' Compensation policy, and we do not--that would be double
charging if we had included any of those employees, and that's contrary to
the labor code of regulations. We can't--

 

Q: What regulation?


A: We can't double charge our policyholders in the State of Texas. You'd
have Staff Force being charged for premium and then I'm going to be
penalizing our policyholder if we'd have done something like that, and that's
not being good stewards for our policyholder's premium.


Q: Well, actually what you'd have is each company paying to cover its own
employees, isn't that right?


 . . . . [Objection and discussion]


A: This is not a situation, from my perspective, where someone truly is
working for two different companies. I--this is an employee that's working
for one company that's in a type of business. As I understand, it's a
temporary agency, I believe, Staff Force is; that the normal course of duty is
that they go out and work for other clients of that--of Staff Force that need
someone to do whatever type of task it is. That doesn't make them an
employee of Port Elevator, especially in lieu of the fact that Staff Force
already has their own Workers' Compensation policy.


Q: Have you analyzed Staff Force's policy?


A: No.


Q: Okay. So you don't really know whether or not they have a policy that
covers Mr. Casados or not, do you?


[Objection]


A: I haven't seen it, no.


Q: You've been told that?


A: By reliable sources, I think.


Q: Who told you that?


A: It's consultation with counsel.


Q: Okay. So we're clear, Port Elevator did not pay a premium that included
calculations for the payroll of Staff Force employees for 2003 through 2005,
right?


A: That's correct.


 . . . .


Q: Did Texas Mutual charge any premiums for Staff Force employees--let
me restate that. Did Texas Mutual charge Port Elevator any premiums for
Workers' Compensation for Staff Force employees after its end-of-the-year
audit in 2002, 2003, 2004, or 2005?


[Objection]


A: No, it did not.


Q: Did any Staff Force employee make a Workers' Compensation claim
under Port Elevator's policy in 2002?


A: No.


Q: Did any Staff Force employee make such a claim in 2003?


A: No. 


Q: How about in 2004?


A: I believe that might be the year, the policy year where Mr. Casados' claim
came into our organization. I can't remember exactly. There's only one
claim from--and that's Mr. Casados'[s], and I can't recall if it was '04 or '05,
but that's the only one.


Q: Okay. I believe it was '05.


A: Okay.


Q: I think it was April of '05. So I understand what you're saying, the only
Workers' Compensation claim that's ever been made by a Staff Force
employee on Port Elevator's Workers' Compensation policy was the claim
for Mr. Casados?


A: That's correct.


Q: Who made that claim?


A: I don't know.


Q: That claim was denied, right?


A: Yes.


[Objection]


A: Yes, it was.


Q: Why was that claim denied?


A: I don't know.


Q: Certainly Port Elevator didn't pay a premium to cover any Staff Force
employees, right?


[Objection]


A: No, they did not.


 . . . . 


Q: Okay. So you're certain, then, that for the years 2002 through 2005 the
payroll for Staff Force was not included in the premium calculations for Port
Elevator?


A: Correct.


 . . . . 


Q: Okay. And this would be an example where that's the payroll for Port
Elevator, but does not include payroll for Staff Force employees working at
Port Elevator, right?


A: Correct.


 . . . . 


 [Objection]


A: That was--that's correct, it's not the intent.


 . . . .


 Stokey was cross-examined by Port Elevator's counsel as follows: 


Q [by Port Elevator's counsel]: Okay. So just to use, then, that term, based
upon what you can see in Exhibit 3 there, Port Elevator was a subscriber as
of April 26, 2005?


A: That's correct. Yes, sir.


 . . . . 


On further examination by appellees' counsel, Stokey testified:


Q [by appellees' counsel]: Okay. So the term 'subscriber' doesn't define
who is or who isn't covered by Workers' Comp, it just describes whether or
not somebody has a Workers' Comp policy or not?


[Objection]


A: If I'm an employer and I'm a subscriber to Workers' Compensation, then
my employees are covered.


Q: Well, in this instance[,] Staff Force people weren't covered, right?


[Objection]


A: From what I'm seeing on this--in this situation, you've got a situation
where the claimant in question was not an employee of our policyholder.


Q: All right. I apologize if I've asked you some of these questions I'm about
to ask you again. I just want to get them clear on the record so that we don't
have to bother you again with another deposition prior to trial.


 Port Elevator did not pay for Workers' Compensation insurance for
Staff Force employees working at Port Elevator's facility, correct?


 [Objection]


A: That's correct.


Q: And Texas Mutual did not charge Port Elevator for Workers'
Compensation coverage for Staff Force employees working at Port
Elevator's facility, correct?


 [Objection]


A: Correct.


Q: And Texas Mutual did not intend to cover Staff Force employees under
Port Elevator's Workers' Compensation policy, correct?


 [Objection]


A: Correct.


 . . . . 


On further examination by Port Elevator's counsel, Stokey testified:


Q [by Port Elevator's counsel]: It is the intent of Texas Mutual to cover all
those persons who are in an employee/employer relationship with Port
Elevator during the policy period at issue?


 [Objection]


A: Yes. Correct.


 Appellees' summary judgment evidence also included Elkins's deposition testimony,
which included the following:

Q [by appellees' counsel]: Did you have a conversation or [sic] any sort of
at Staff Force if who, if anybody, was supposed to provide worker's comp for
the Staff Force employees?


A [Elkins]: Yes, I asked Staff Force all your--in the price you're charging me
what's included, and they said workers' comp all of that is included in the
price we're charging.


Q: So you guys didn't get workers' comp for the Staff Force employees?


[Port Elevator's counsel]: Object to form.


A: At the--we have workers' comp and if Staff Force's people were not
covered under Staff Force's comp then I believe my policy automatically
charges me a premium based on the wages I pay Staff Force.


Q: That's what you believe?


A: That's what I believe, yes. 


On further examination by Staff Force's counsel, Elkins testified:


Q [by Staff Force's counsel]: Now, when you had the discussion with Staff
Force, the question was asked, do you have workers' compensation
insurance included in this rate?


A [Elkins]: Yes, sir.


Q: All right. And what were you told?


A: Yes, we do.


Q: Did you ask which worker's compensation carrier they had worker's comp
insurance with?


A: No, we didn't.


Q: Was there any discussion that if they had worker's compensation who
would be insured under the policy, being Staff Force and the client company
or did you get into that explanation?


A: They didn't get into that explanation. I just asked them for a binder. 

 

 Elkins testified that the "binder" he referred to reflected that the insurer was Dallas
Fire. Elkins also testified that prior to Casados's death, no Port Elevator temporary
employee had been injured.

 Appellees also submitted a "Notice of Denial of Compensability/Liability and
Refusal to Pay Benefits" form issued by Texas Mutual, Port Elevator's workers'
compensation carrier. The document contains the following explanation:

TEXAS MUTUAL INSURANCE COMPANY DENIES THE CLAIM IN ITS
ENTIRETY AS NO INJURY WAS SUSTAINED WITHIN THE COURSE AND
SCOPE OF EMPLOYMENT WITH OUR INSURED PORT ELEVATOR-BROWNSVILLE. MR. CASADOS'S EMPLOYER AT ALL TIMES
RELEVANT TO THIS CLAIM WAS AMS STAFF LEASING, DBA STAFF
FORCE INC[.,] WHICH IS NOT COVERED BY A WORKERS
COMPENSATION POLICY ISSUED BY TEXAS MUTUAL INSURANCE
COMPANY. PER INVESTIGATION, THE CORRECT CARRIER IS DALLAS
FIRE INSURANCE COMPANY AND THE POLICY NUMBER IS
DWC020005-01[. (33)] 


 In their "Amended Motion for Partial Summary Judgment on the Affirmative Defense
of the Workers' Compensation Bar," appellees cited the supreme court's opinion in Garza
in support of their position that Port Elevator was required to show that it was covered by
a policy for an injury to Casados. (34) We agree that Garza supports appellees' position. In
Garza, the supreme court held that a temporary employment agency cannot obtain
workers' compensation insurance for a client simply by obtaining coverage for itself; rather,
there must be explicit coverage for both employers. (35) In so holding, the court explained:

The Staff Leasing Services Act does not apply to temporary or seasonal
employment, but the specificity with which it addresses workers'
compensation strongly indicates that a leasing company cannot accomplish
under the general workers' compensation provisions of the Labor Code what
it is prohibited from accomplishing under the Staff Leasing Services Act,
which is also a part of the Labor Code. Suppose, for example, that the
leasing company and the client decided not to expressly agree in a written
contract that the client shares the right of direction and control of employees,
but in fact, the parties contemplated they would share actual control and did
so. The Staff Leasing Services Act would not apply. Did the Legislature
intend to allow the leasing company and its client nevertheless to agree that
the leasing company would obtain a policy for itself, based on its own
experience rating, and that such a policy would also cover leased employees
while working under the actual control of the client? The answer is no, this
is not contemplated by the Labor Code. The specificity and details of the
Staff Leasing Services Act negate the notion that parties can, by private
agreement, decide that a single policy naming only one insured will cover
one company's employees while they are working under the direct control of
another company, or that the experience rating of one and not the other will
determine who the named insured will be.[ (36)]


 Here, Port Elevator argues that because it can show that it had explicit workers'
compensation insurance coverage for itself, it established the exclusive remedy affirmative
defense, and is not required to show that its workers' compensation policy covered
Casados. We disagree.

 In Garza, the supreme court stated: "Accordingly, Exel has not established that it
is 'covered by workers' compensation insurance coverage' for a work-related injury
sustained by the employee,' in this case, Garza, which is a prerequisite to the application
of the exclusive remedy provision in section 408.001(a)." (37)

 We hold that the summary judgment evidence conclusively established that
Casados was not a covered employee under Port Elevator's workers' compensation
insurance policy. Following Garza, we hold that Port Elevator has not established that it
is covered by workers' compensation insurance coverage for a work-related injury
sustained by the employee, in this case, Casados, which is a prerequisite to the application
of the exclusive remedy provision in section 408.001(a). (38) We overrule Port Elevator's sole
issue. In so holding, we are mindful that the workers' compensation statute is liberally
construed in the worker's favor. (39) 

IV. Conclusion


 We hold that the trial court did not err in denying Port Elevator's motion for summary
judgment and in granting appellees' motion for partial summary judgment. We affirm the
trial court's judgment. 

 

 LINDA REYNA YAÑEZ,

 Justice


Delivered and filed the

27th day of May, 2010.

 

 

 

 




 
1. Appellees, plaintiffs below, are acting individually and as representatives of their deceased son,
Rafael Casados. Casados was unmarried and had no children when he died. 
2. See Tex. Labor Code Ann. §§ 406.034(a), 408.001 (Vernon 2006). Port Elevator briefed a second
issue, arguing that if there is a fact question regarding whether Casados was Port Elevator's employee, the
trial court erred in refusing to submit a jury question on the issue. However, the parties do not dispute that
Casados was an employee of both Port Elevator and Staff Force, Inc. ("Staff Force"). In its reply brief, Port
Elevator notes that we need not reach the second issue because the parties agree that Casados was Port
Elevator's employee. 
3. The record reflects that Staff Force entered into a Staff Leasing Agreement with E-Z Bookkeepers,
Inc. d/b/a Professional Business Solutions ("PBS") pursuant to the Staff Leasing Services Act ("SLSA"). See
id. §§ 91.001-.063 (Vernon 2006 & Supp. 2009). Thus, with respect to PBS (the license holder), Staff Force
was a "client company." See id. § 91.001 (3), (11) (Vernon Supp. 2009). Then, Staff Force, acting as a
"general employer," provided temporary workers to its "client companies," including Port Elevator. See
Wingfoot Enters. v. Alvarado, 111 S.W.3d 134, 136 n.9 (Tex. 2003); Western Steel Co., Inc. v. Altenburg,
169 S.W.3d 347, 350 (Tex. App.-Corpus Christi 2005) rev'd on other grounds, 206 S.W.3d 121, 124 (Tex.
2006). The effect of this arrangement is that PBS, the license holder, leased Casados to Staff Force, the
client company, which in turn, leased Casados to Port Elevator. 
4. The record shows that Staff Force's work order assigning Casados to Port Elevator reflects a "start
date" of April 25, 2005. Casados's death occurred on April 26, 2005. 
5. The only appellant in this appeal is Port Elevator.
6. See Tex. Labor Code Ann. § 408.001(b) (Vernon 2006) ("This section does not prohibit the recovery
of exemplary damages by the surviving spouse or heirs of the body of a deceased employee whose death was
caused by an intentional act or omission of the employer or by the employer's 'gross negligence.'"). 
7. Port Elevator references exhibits attached to Staff Force's "Plea to Jurisdiction and Motion to
Dismiss or Abate," which are included in the record before us. Those documents purportedly show that Dallas
Fire Insurance Company ("Dallas Fire"), PBS's workers' compensation carrier, paid $56,238.00 to the
subsequent injury fund of the Division of Workers' Compensation because Casados had no legal
beneficiaries. See id. § 403.007 (Vernon 2006). 
8. D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co., 300 S.W.3d 740, 743 (Tex. 2009). 
9. HC Beck, Ltd. v. Rice, 284 S.W.3d 349, 352 (Tex. 2009). 
10. Coffey v. Singer Asset Fin. Co., 223 S.W.3d 559, 562-63 (Tex. App.-Dallas 2007, no pet.) (citing
Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995)).
11. Browning v. Prostok, 165 S.W.3d 336, 344 (Tex. 2005) (citing Provident Life Ins. Co. v. Knott, 128
S.W.3d 211, 216 (Tex. 2003)); Coffey, 223 S.W.3d at 563.
12. HC Beck, Ltd., 284 S.W.3d at 350. 
13. See Tex. Labor Code Ann. § 408.001(a). 
14. Funes v. Eldridge Elec. Co., 270 S.W.3d 666, 668 (Tex. App.-San Antonio 2008, no pet.); Morales
v. Martin Res., Inc., 183 S.W.3d 469, 471 (Tex. App.-Eastland 2005, no pet.); Western Steel Co., Inc., 169
S.W.3d at 349. 
15. See Morales, 183 S.W.3d at 471. 
16. Id. (citing Garza v. Exel Logistics, Inc., 161 S.W.3d 473, 475 (Tex. 2005); Wingfoot Enters., 111
S.W.3d at 144). 
17. Guerrero v. Harmon Tank Co., 55 S.W.3d 19, 25 (Tex. App.-Amarillo 2001, pet. denied). 
18. See Wesby v. Act Pipe & Supply, Inc., 199 S.W.3d 614, 617-18 (Tex. App.-Dallas 2006, no pet.); 
Western Steel Co., Inc., 169 S.W.3d at 350; Univ. of Houston-Clear Lake v. Marsh, 981 S.W.2d 912, 914
(Tex. App.-Houston [1st Dist.] 1998, no pet.). 
19. We note that in its motion for summary judgment, Port Elevator argued that appellees had "no
evidence" that appellees exhausted their administrative remedies. Port Elevator has not raised this argument
on appeal, and we do not address it. See Tex. R. App. P. 38.1(i). 
20. See Garza, 161 S.W.3d at 478 ("The Act does not permit a temporary employment agency like
Interim to obtain coverage for a client simply by obtaining coverage for itself. There must be explicit coverage
for the client."). 
21. The policy period is July 12, 2004 through July 12, 2005. Casados's fatal accident occurred on
April 26, 2005. 
22. Tex. Workers' Compensation Ins. Fund v. Del Industrial, Inc., 35 S.W.3d 591, 596 (Tex. 2000) ("It
has long been the law in Texas that an employer may not split its workforce by providing workers'
compensation insurance to some workers while leaving others without coverage."). 
23. Md. Cas. Co. v. Sullivan, 334 S.W.2d 783, 786 (Tex. 1960). 
24. Tex. Employers' Ins. Ass'n v. Stanton, 140 S.W.2d 337, 339 (Tex. Civ. App.-Amarillo 1940, writ
ref'd). 
25. See Del Industrial, Inc., 35 S.W.3d at 596 (citing Tex. Labor Code Ann. §§ 91.001-.063) (the
SLSA).
26. Id. 
27. See id. 
28. See id. 
29. Neither party asserts that Staff Force is a staff leasing agency pursuant to the SLSA. Port Elevator
characterizes Staff Force as a "temporary employment agency." Appellees characterize Staff Force as a
"temporary staffing company." As noted, Staff Force was a "client company" under the SLSA because it
entered into a staff leasing agreement with PBS. Evidence in the record shows that PBS carried workers'
compensation insurance coverage for the applicable period through Dallas Fire. Staff Force was not a named
insured on the Dallas Fire policy or on any other policy that appears in the record. 
30. Del Industrial, Inc., 35 S.W.3d at 596.
31. See Tex. Labor Code Ann. § 408.001 (emphasis added). 
32. In its appellate brief, Port Elevator cites Bradley v. Phillips Chem. Co., 484 F.Supp.2d 604, 615 (S.
D. Tex. 2007), for the proposition that the code classifications do not limit coverage under the policy and
cannot be used to exclude employees from coverage. However, Port Elevator did not make this argument
in its motion for summary judgment or in its responses to appellees' motion. Accordingly, we do not consider
it. See Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer
or other response shall not be considered on appeal as grounds for reversal.").
33. In its "Supplemental Response to Plaintiffs' Amended Motion for Summary Judgment," Port
Elevator noted that the denial statement was made by Texas Mutual, not by Port Elevator, and that Texas
Mutual's position is "wholly immaterial" to Port Elevator's position. 
34. See Garza, 161 S.W.3d at 481. 
35. See id. at 479. 
36. Id. (internal footnotes omitted).
37. Id. at 481 (emphasis added). 
38. See id. (emphasis added).
39. See Navarette v. Temple Indep. Sch. Dist., 706 S.W.2d 308, 309 (Tex. 1986).