COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



EL PASO TOOL AND DIE
COMPANY, INC.,

§

No. 08-19-00087-CV

Appellant,

§

Appeal from the

v.

§

County Court at Law Number Three

§

CARLOS MENDEZ

of El Paso County, Texas

§

Appellee.

(TC# 2017-DCV0027)

§

§

**O P I N I O N**

We granted El Paso Tool and Die Company, Inc. (El Paso Tool) the right to pursue a permissive appeal from the denial of a motion for summary judgment. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(d) and (f) (authorizing and setting forth standards for permissive appeals). The controlling legal issue that El Paso Tool advances is "[w]hether a general employee of a temporary staffing agency may also be an employee of the staffing agency's client company for purposes of the workers' compensation exclusive remedy provision." The answer to that question is undoubtedly "yes" under existing Texas Supreme Court precedent. But more specifically, El Paso Tool contends that the trial court applied the wrong legal standard to answer that question by looking to case law under the respondeat superior and borrowed servant doctrines, rather than the standard developed under the Texas Labor Code for determining who is the "employer" of an injured worker. On closer examination of the record, it is not clear to us that the

1

trial court in fact applied the wrong standard. Rather, it may have simply found a genuine issue of material fact which precluded summary judgment. Accordingly, we conclude that the petition for permissive review was improvidently granted and remand the case to the trial court.

## I. BACKGROUND

Carlos Mendez lost all or parts of two fingers in an industrial accident on March 16, 2015. According to the allegations in his lawsuit, he was employed by Elwood Staffing at the time of the accident. He alleged that he was working as an independent contractor at El Paso Tool's facility. Specifically, he was working on a machine press that stamps out metal parts. When his hand was in the working area of the machine, the stamping press unexpectedly came down and crushed several of his fingers. His suit asserts common law negligence claims against El Paso Tool, and product liability claims against the alleged manufacturer of the machine press. Only the claims against El Paso Tool are before us.

El Paso Tool filed a motion for summary judgment, supported by the affidavit of its President and sole shareholder, Salvador Robles. The affidavit claimed that Mendez was a temporary laborer supplied to El Paso Tool under a contract with Elwood Staffing. His affidavit stated that Mendez's duties required him to operate metal press machines, and that he was injured on one of those machines. The affidavit further claims that El Paso Tool was solely responsible for scheduling hours, assigning work, and supervising Mendez's daily activities. Robles also averred that Mendez was: (1) supervised only by El Paso Tool, and not Elwood Staffing at the time of the accident; (2) he was working at El Paso Tool's facility; and (3) using a machine press that it owned. Finally, the affidavit states that El Paso Tool had its own workers' compensation policy. From this, El Paso Tool urged that it was entitled to judgment as a matter law under the

2

exclusive remedy defense found in the Texas Labor Code. (hereinafter "the Act")[1] The motion was based on El Paso Tool being a subscriber under the Act, and not that Elwood Staffing as a temporary employment agency provided workers' compensation insurance to all the employees that it sent to client companies.[2]

Mendez's response to the summary judgment alleged that El Paso Tool did not control the specific details of his work at the time of his injury. Consequently, he asserted that he was not a "borrowed servant" or an "employee" of El Paso Tool at the time of the accident. Alternatively, he claimed that the evidence at least created a fact question on that issue. From the summary judgment evidence, we gather that there was no signed contract between El Paso Tool and Elwood Staffing, thus no written contractual term between those parties that defined Mendez's employment status. Rather, the parties relied only on affidavits and deposition testimony, either from Mendez or El Paso Tool witnesses.

Mendez attached his own affidavit which states that no one from El Paso Tool "controlled the specific details of the work I was performing at the time of the incident[.]" El Paso Tool had indicated that Javier Berumen, Jr. was supervising Mendez's work. Mendez's affidavit, however, states that Berumen did not "supervise my work in any way and was not even present when the incident took place." Other than showing him how to turn the machine press on or off, he swore that no one from El Paso Tool trained him on how to do the job. Mendez also attached several depositions to his response that we describe in more detail below.

---

[1] TEX.LAB.CODE ANN. § 408.001(a) provides:

> Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee.

[2] Contrast *Robles v. Mt. Franklin Food, L.L.C.*, No. 08-18-00170-CV, 2019 WL 3812375, at *6 (Tex.App.--El Paso Aug. 14, 2019, reh'g pending).

The trial court denied El Paso Tool's motion. Its order states: "The Court finds that TEX.LAB.CODE ANN. § 408.001 does not apply to the facts in this case because [Mendez] was working as an independent contractor and not an employee of [El Paso Tool] at the time of [Mendez's] accident." The order further finds that an interlocutory appeal would materially advance the ultimate termination of the lawsuit, and that the trial court's ruling turned on a controlling issue of law: whether the exclusive remedy defense under Section 408.001 "applies under the facts in this case." El Paso Tool then asked this Court for permission to appeal under TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(d) and (f) which we granted.

## II. DISCUSSION

### A. The Exclusive Remedy Defense and Temporary Workers.

As the Texas Supreme Court has observed, Texas has stood alone in not requiring private employers to provide workers' compensation insurance. *Port Elevator-Brownsville v. Casados*, 358 S.W.3d 238, 241 (Tex. 2012). Texas does, however, encourage private employers to secure coverage by (1) abolishing many common-law defenses in work-injury lawsuits if they do not subscribe, and (2) providing a bar to ordinary negligence suits if they do. TEX.LAB.CODE ANN. § 406.033 (abolishing common-law defenses); *Id.* at § 408.001(a) (codifying exclusive remedy defense). Thus, an employer who subscribes to workers' compensation insurance may raise the exclusive remedy provision as a bar to a negligence claim filed against it. *Casados*, 358 S.W.3d at 241.[3]

To invoke the exclusive remedy provision, a defendant must generally show that: (1) the injured worker was an employee of the defendant at the time of the work-related injury, and (2)

---

[3] The Act includes two notable exceptions to the exclusive remedy defense: (1) when an employee's death is "caused by an intentional act or omission of the employer or by the employer's gross negligence[;]" or (2) when the employee has validly opted out of the system prior to starting employment. TEX.LAB.CODE ANN. § 408.001(b) (intentional or grossly negligent acts); TEX.LAB.CODE ANN. § 406.034 (opt-out provisions).

4

the injured worker was covered by workers' compensation insurance. *See* TEX.LAB.CODE ANN. § 408.001(a). An employee, however, may have more than one employer at the time of an injury for the purposes of the exclusive remedies defense. In *Wingfoot Enterprises v. Alvarado*, for instance, an injured worker sued both his employee leasing company and its client company following the worker's on-the-job-injury. 111 S.W.3d 134, 135 (Tex. 2003). The leasing company obtained a summary judgment based on the exclusive remedy defense because it had provided workers' compensation insurance. *Id.* at 136. The case proceeded to trial against the client company. The jury found that the worker was the "borrowed servant" of the client company, which entitled the client company to the exclusive remedy defense. *Id.* The worker then challenged on appeal the summary judgment in favor of the leasing company, contending that there could be only one employer. The Texas Supreme Court disagreed: "[W]e conclude that the Act's decided bias in favor of employers electing to provide coverage for their employees supports our conclusion that the Act permits more than one employer for workers' compensation purposes." *Id.* at 140. *Wingfoot*'s holding protects temporary workers who have one general employer but may move around to different worksites for different client companies. "[A]n employee should not be placed in the position of trying to determine . . . which of two entities was his or her employer on any given day[.]" *Id.*

The flipside--and thus the issue presented here--arose in *Garza v. Excel Logistics, Inc.*, 161 S.W.3d 473 (Tex. 2005). In *Garza*, the client company sought to raise the exclusive remedy defense. *Id.* at 476. That court first had to decide if the worker was the "employee" of the client company. *Id.* The Labor Code defines an "employee" as "each person in the service of another under a contract of hire, whether express or implied, or oral or written." TEX.LAB.CODE ANN. § 401.012(a). The *Garza* court formulated this test for determining employee status:

5

> [I]n determining if a general employee of a temporary employment agency is also an employee of a client company for purposes of the Act, we consider traditional indicia, such as the exercise of actual control over the details of the work that gave rise to the injury.

*Garza*, 161 S.W.3d at 477; *see also Wingfoot*, 111 S.W.3d at 139 (the client company "become[s] an employer by controlling the details of a worker's work at the time of injury"). *Garza* held that the temporary employee in that case was the client's employee as a matter of law because, the "undisputed evidence" showed that at the time of injury, Garza was (1) working on the client's premises, (2) in the furtherance of the client's day-to-day business, and (3) the details of his work that caused his injury were specifically directed by the client. *Garza*, 161 S.W.3d at 477.

The second issue before the *Garza* court was whether the client company proved that it had a workers' compensation policy. *Id*. at 477-78. It concluded that the client company failed to conclusively prove the existence of a policy and remanded the case for that reason. *Id*. There is no dispute here that El Paso Tool has such a policy. Instead, the only issues before us are whether the trial court applied the *Garza* test (as opposed to some other test for employment), and second, was the evidence similarly undisputed so as to provide only one clear answer to El Paso Tool's status as the employer.

**B. Standard of Review**

Two standards of review are relevant to this appeal. The first pertains to the summary judgment motion filed below. We review a trial court's decision to grant summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). Under a traditional motion for summary judgment, the moving party carries the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Helix Energy Sols. Group, Inc. v. Gold*, 522 S.W.3d 427, 431 (Tex. 2017). Stated otherwise, El Paso Tool must have conclusively negated one of the elements of Mendez's claim, or as here,

conclusively established as a matter of law all the elements of an affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). Evidence is conclusive if reasonable people could not differ in the conclusions drawn from it. *Gold*, 522 S.W.3d at 431. Once the movant establishes its right to summary judgment, the burden then shifts to the non-movant to present evidence which raises a genuine issue of material fact. *See City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex. 1979).

Evidence favorable to the non-movant is taken as true in deciding whether there is a disputed issue of material fact. *Fort Worth Osteopathic Hospital, Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Tranter v. Duemling*, 129 S.W.3d 257, 260 (Tex.App.--El Paso 2004, no pet.). All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. *Fort Worth Osteopathic Hospital*, 148 S.W.3d at 99.

We also deal here with a permissive appeal. Section 51.014(d) of the Texas Civil Practices and Remedies Code permits an interlocutory appeal of an otherwise unappealable order, including the denial of a summary judgment motion, *if* several predicates are met. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(d). To qualify, the trial court must first certify that the order is immediately appealable, and expressly identify a controlling question of law on which there is substantial ground for disagreement. *Id*.; *see also* TEX.R.CIV.P. 168 (requirement that trial court's order identifies a "controlling question of law as to which there is a substantial ground for difference of opinion[.]"). Next, the trial court's order must also explain why an immediate appeal may materially advance the ultimate resolution of the case. TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(d). Moreover, this Court must agree to hear the appeal. *Id*. at § 51.014(f).

Our procedural rules make it clear that we have the discretion to accept or deny a permissive interlocutory appeal. *Sabre Travel Int'l., Ltd. v. Deutsche Lufthansa AG*, 567 S.W.3d

725, 732 (Tex. 2019) *citing* TEX.R.CIV.P. 168 and TEX.R.APP.P. 28.3. We exercise that discretion, however, with an eye toward sparing parties "the inevitable inefficiencies of the final judgment rule" when we can quickly and efficiently resolve "controlling, uncertain issues of law that are important to the outcome of the litigation." *Id*. But to that end, the controlling issue needs to be solely a question of law unconstrained by procedural or factual issues. *See Diamond Prods. Int'l, Inc. v. Handsel*, 142 S.W.3d 491, 494 (Tex.App.--Houston [14th Dist.] 2004, no pet.) ("The statute does not contemplate permissive appeals of summary judgments where the facts are in dispute. Instead, permissive appeals should be reserved for determination of controlling legal issues necessary to the resolution of the case."); *College Station Med. Ctr., LLC v. Kilaspa*, 494 S.W.3d 307, 313 (Tex.App.--Waco 2015, pet. denied) ("In a permissive interlocutory appeal, the issue should be framed solely as a question of law that needs to be resolved that disposes of the case.").

### C. Application

We conclude that the permissive appeal should be dismissed as improvidently granted for two reasons. First, it is not clear that the trial court applied the wrong legal test in deciding if Mendez was El Paso Tool's employee at the time of the accident. Thus, we cannot identify a controlling issue of law that governs the outcome of the appeal. Second, and somewhat related, the record contains disputed evidence over who controlled the details of the work that gave rise to the injury and we cannot conclude this case can be resolved by applying an undisputed set of facts to the prevailing law.

El Paso Tool argues that the trial court improperly applied the respondeat superior and borrowed servant doctrines to decide this case. At the outset, the test for employee status under the Act, and the tests for both borrowed servant and respondeat superior each include some formulation for the "right of control." *Garza*, 161 S.W.3d at 477 (employee status under the Act

8

determined by traditional indicia, such as actual right of control over details of work causing accident); *Limestone Products Distribution., Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002) (setting out factors for right of control in determining if company was responsible for driver's conduct); *Sparger v. Worley Hosp., Inc.*, 547 S.W.2d 582, 583 (Tex. 1977) (stating that under the borrowed servant doctrine the essential inquiry would be whether or not one party had the right to control the other party in the details of the specific act raising the issue of liability). However, the trial court's order does not state that it used any particular formulation of the right of control test.

While the trial court found that Mendez was an "independent contractor," that finding alone does not direct us to any particular legal standard that the trial court used to resolve the case. The fact-finder in this case will have to determine Mendez's status while at El Paso Tool to determine what duty, if any, was owed him (or what defenses may apply). He might be an "employee" of El Paso Tool, but if not that, he might wear some other hat, like that of an "independent contractor." *See Thompson v. Travelers Indem. Co. of Rhode Island*, 789 S.W.2d 277, 279 (Tex. 1990) (finding that evidence did not conclusively establish that jockey was employee of racetrack as distinct from an independent contractor for purposes of Workers' Compensation Act). The mere reference to Mendez being an independent contractor does not instruct us that the trial court used an incorrect legal standard.[4]

Neither does El Paso Tool identify what specific aspects of the respondeat superior or borrowed servant doctrines were applied here that would be outcome determinative. The Texas Supreme Court in *Garza* instructed that courts look to "traditional indicia" of employment, "such

---

[4] We would take issue with the trial court making an affirmative finding that Mendez was an independent contractor. Mendez did not move for summary judgment seeking that finding, and as we discuss above, and below, the evidence on the right of control was conflicting. Given that procedural posture, the most the trial court could have done would be to deny El Paso Tool's summary judgment because it had not conclusively proved all the elements of its defense. Mendez's counsel conceded at oral argument that Mendez's status is a disputed fact question that, based on this record, must be decided by the fact-finder. Based on that concession, we find it unnecessary to accept the case to address the independent contractor finding.

9

as the exercise of actual control over the details of the work that gave rise to the injury." *Garza*, 161 S.W.3d at 477. The court ended its opinion by emphasizing that it was construing the Act and "not applying general common-law principles regarding vicarious liability for injuries to third parties." *Id.* at 481. The court then restated what it said in *Wingfoot:*

> The common-law principles that define when there will be vicarious liability are designed to assign liability for injury to third parties to the party who was directing the details of the negligent actor's conduct when that negligence occurred. The Workers' Compensation Act was not.

*Id.*, *quoting in part Wingfoot*, 111 S.W.3d at 146. And we certainly agree that not every aspect of respondeat superior analysis should apply in this case. Respondeat superior seeks to make one party pay for the acts of another. It would be relevant here if some third person was seeking to make El Paso Tool responsible for some action of Mendez that, for instance, injured the third person. At its heart, this is a public policy question of whether one party should be responsible for another's conduct based on having "such a degree of express or implied control over the actor to justify imposing on him the consequences of the actor's wrongful conduct." *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 542 (Tex. 2002). Because we deal here with only the statutory dictates of the Act, public policy does not factor into the equation. But neither is it clear that the trial court used any public policy analysis to arrive at its decision. There may be other distinctions between how right of control applies here and in common law applications. Our problem is that the trial court's order does not suggest that any of those distinctions made a difference in this case.

Similarly, we cannot tell whether the trial court misapplied any aspect of the borrowed servant doctrine. The right of control test is at the heart of the borrowed servant doctrine and has often been raised by client companies to bar claims by temporary workers through the exclusive remedy defense. *See Wesby v. Act Pipe & Supply, Inc.*, 199 S.W.3d 614, 619 (Tex.App.--Dallas 2006, no pet.) (holding that the client company was entitled to the exclusive remedy defense under

10

the borrowed servant doctrine); *Flores v. N. Am. Techs. Group, Inc.*, 176 S.W.3d 442, 448 (Tex.App.--Houston [1st Dist.] 2004, pet. denied) (client company prevailed in summary judgment claiming it was a borrowing employer of the temporary worker under the right to control test); *Richmond v. L.D. Brinkman & Co. (Texas) Inc.*, 36 S.W.3d 903, 905 (Tex.App.--Dallas 2001, pet. denied) (client company entitled to exclusive remedy defense against injury claim of temporary worker under borrowed servant doctrine); *see also Phillips v. Am. Elastomer Products, L.L.C.*, 316 S.W.3d 181, 187 (Tex.App.--Houston [14th Dist.] 2010, pet. denied) (in claim by staffing agency employee, court notes that "[w]hen there is a question as to whether one is an 'employer' under the TWCA, Texas courts turn to the borrowed servant doctrine."); *Lockett v. HB Zachry Co.,* 285 S.W.3d 63, 75 (Tex.App.--Houston [1st Dist.] 2009, no pet.) (noting, in the workers' compensation context, that "[b]orrowed employee status hinges on whether the other employer or its agents have the right to direct and control the employee with respect to the details of the particular work at issue"). So, while El Paso Tool faults the trial judge for relying on the right of control analysis from borrowed servant doctrine cases, we are unable to say that (1) the trial court did so, or (2) if it did, it did so in a way that was erroneous.

Our second issue with the appeal is the conflicting evidence on right of control. The trial court's order identifies the legal issue in this case as whether Section 408.001 precludes El Paso Tool's liability "under the facts of this case." But the facts of this case appear to be disputed. While El Paso Tool offered evidence that it controlled all the details of Mendez's work, Mendez stated just the opposite in his affidavit:

> No one from El Paso Tool . . . controlled the specific details of the work I was performing at the time of the incident, including Javier Berumen, Jr. -who did not supervise my work in any way and was not even present when the incident took place that caused me to suffer my injuries. No one from El Paso Tool . . . had the right to control the progress, details, and methods of operation of the work I performed, and I used my own means and methods without submitting myself to

11

the control of any other person from El Paso Tool . . . in performing the work. No one from El Paso Tool . . . trained me on how to perform the work on the industrial machine press. Manuel Castro only showed me how to turn the machine on and off. No one from El Paso Tool . . . was supervising me or working with me when the incident took place. No one from El Paso Tool . . . controlled the means and details of the work that I performed while at the facility located at 10859 Pellicano Drive.[5]

Other testimony from the summary judgment record indicated that if El Paso Tool needed an additional press operator, it called Elwood Staffing and asked that one be sent over. Berumen, the production control manager, described himself as Mendez's supervisor for the whole time Mendez was working there. Berumen gave out "job assignments" to the workers, including Mendez, but he agreed that he did not give any directions to Mendez on how to operate the machine press. Berumen admitted that during the entire time Mendez worked with the machine press, he never went to oversee or supervise Mendez's work to make sure he was operating the machine correctly and he "didn't know" if anyone else with El Paso Tool had done so. Instead, he believed that Castro had trained Mendez on the machine. Yet Mendez swore that Castro only showed him "how to turn the machine on and off."

El Paso Tool responds that these factual disputes are not material. Instead, it argues that because it assigned Mendez to the machine, and because the accident is tied to a claim that the machine was defective, those two facts standing alone establish employer status under the Act. El Paso Tool analogizes these facts to those in *Garza*, where the client company's supervisor told the temporary worker to walk across a moving conveyor belt that led to the injury producing event. *Garza*, 161 S.W.3d at 477. The injured worker in *Garza* stated that he would have walked around

---

[5] There are other parts of Mendez affidavit that we do not consider because they were struck by the trial court. Mendez had also stated in his affidavit that he was an independent contractor. El Paso Tool objected to that statement as it was conclusory, a legal conclusion, and beyond the witness's qualifications. El Paso Tool objected to one other sentence of the affidavit because it stated an opinion using "and/or" which made the conclusion ambiguous. The trial court sustained these objections, eliminating these specific parts of the affidavit from the summary judgment record.

the conveyor belt, but for the instruction from the client company's supervisor. *Id*. This case, however, is not as clear. First, while El Paso Tool conceded they assigned Mendez to the machine, everything else about who gave him instructions and training on the machine is disputed. Second, while some of Mendez's evidence and allegations focus on defects in the machine (its lack of guards and a misplaced foot pedal), other allegations raised a variety of claims tied to how the machine was used. He claims and presented some evidence, for instance, that El Paso Tool failed to enforce safety rules, failed to warn of dangers, was negligent in its supervision, and failed to train him in the operation of the machine. El Paso Tool's accident report largely attributes the accident to Mendez's failure to use a metal hook to retrieve parts from the stamping area, and not a defect in the machine. So, while it may be undisputed that El Paso Tool assigned Mendez to the machine, what happened beyond that point, and what caused the accident, are not clearly established by the summary judgment record.

Because we find some disputes as to who actually controlled the details of the work that gave rise to the injury, this case is different from *Garza* where the relevant facts were undisputed, and the client company specifically directed the very act that caused the injury. *Id*. And because permissive appeals should be limited to those cases where we can resolve controlling legal issues necessary to the resolution of the case, *Handsel*, 142 S.W.3d at 494, we exercise our discretion to decide the permission to appeal was improvidently granted.

JEFF ALLEY, Chief Justice

December 4, 2019

Before Alley, C.J., Rodriguez, and Palafox, JJ.
Alley, C.J., Concurring